## DONAHUE v. SUSQUEHANNA COLLIERIES CO.

### No. 8352.

Circuit Court of Appeals, Third Circuit.
Argued July 15, 1943.
Decided Sept. 1, 1943.

Rehearing Denied Oct. 19, 1943.

See, also, 49 F.Supp. 845.

**4**

Charles B. Waller and Ben R. Jones, Jr., both of Wilkes-Barre, Pa. (McLanahan, Merritt, Ingraham & Christy, of New York City, and Bedford, Waller, Jones & Darling, of Wilkes-Barre, Pa., on the brief), for appellant.

Charles L. Casper, Fahey & Casper, and Albert H. Aston, all of Wilkes-Barre, Pa. (William J. Fahey, and Albert H. Aston, both of Wilkes-Barre, Pa., of counsel), for appellee.

Before GOODRICH and McLAUGHLIN, Circuit Judges and KIRKPATRICK, District Judge.

GOODRICH, Circuit Judge.

■ The plaintiff brought an action in the District Court for the Middle District of Pennsylvania, suing for himself and other employees of the defendant, to recover amounts alleged to be due them for overtime work, which they alleged they had not been paid and were entitled to by virtue of the Fair Labor Standards Act of June 25, 1938, 29 U.S.C.A. § 201 et seq. The contracts under which the complaining employees were employed contained a provision for arbitration of "any difficulty or disagreement * * * growing out of the relations of employers and employed".[1] The defendant filed its application praying the court to stay the trial of the action until arbitration had been had in accordance with the terms of the agreement. The basis of this prayer was the United States Arbitration Act of Feb. 12, 1925, 9 U.S.C.A. § 1 et seq. The District Court denied the application and the defendant appealed to this court. The denial of the application is an appealable order. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 1935, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583.

The plaintiff says the District Court was right for three reasons. The first concerns the time at which the order staying proceedings may be granted. The second has to do with whether the Act is limited to certain definitely defined types of contracts. The third raises the question whether the statute is applicable to claims under the Fair Labor Standards Act.

**I.**

■ The plaintiff says that defendant has been too eager about asking for its stay order pending arbitration proceedings and has demanded it before this litigation has reached the stage where the statute authorizes a court to enter a stay order. The defendant has not answered. All we have giving the statement of the main case is the plaintiff's complaint. Section 3 of the statute, set out in full later, authorizes a court to stay the trial where the suit is brought in a federal court "upon any issue referable to arbitration," etc. The plaintiff pertinently asks how anyone can know whether the case presents any issue referable to arbitration before the defendant, by answering, has shown of what the dispute between the parties consists. Clear it is that we cannot know what points will be fought out between the litigants in this lawsuit until we have some sort of a statement of position by the defendant. It is open to him to make no denial of any of the plaintiff's statements and set up a counterclaim as his only defense.

The answer to this point depends, obviously, upon what Congress meant by the term "issue referable to arbitration" in § 3. If it meant what the term means in pleading, the controversy must be sharpened to a certain and material point, affirmed by one party and denied by the other—at least so says a law dictionary. But "issue" has many meanings, even as used in the law, and more as used in common speech. We have no reason to think that Congress was using it in this Act as the language of pleading. We think it more reasonable to interpret the term in the Act to mean "claim", or that which one party demands from the other. In this case the plaintiff demanded money alleged to be due him on a contract, and that contract itself contained an arbitration clause. We think this demand constituted an "issue referable to arbitration" within the meaning of the statute. The defendant's application was not, therefore, premature.

**II.**

■ The second question is whether § 3 of the Act, which provides for a stay of

---

[1] The language is: "any difficulty or disagreement * * * either as to * * * interpretation or application or in any way growing out of the relations of employers and employed, which cannot be settled or adjusted by consultation between the superintendent or manager of the mine or mines and the miner or miners directly interested * * * shall be referred to a permanent joint committee to be called a Board of Conciliation, to consist of six persons appointed as hereinafter provided. * * *"

proceedings in a lawsuit until arbitration proceedings have been had, is limited to the contracts and transactions described in § 2. This is the question on which the parties have expended the bulk of their ammunition. The title and the first three sections of the statute are set out in the note for clearer understanding of this narrow but important point.[2]

The title of the Act suggests, though of course it does not compel, the conclusion that the provisions of the statute are applicable to three kinds of things: (1) Contracts, (2) maritime transactions and (3) commerce, interstate and foreign. The first section defines maritime transactions and commerce. Then the second section proceeds to lay down a rule of substantive law regarding the validity of an agreement for arbitration in case of any maritime transaction or a contract evidencing a transaction involving commerce. Congress was here making a rule concerning subject matter within its own constitutional legislative authority. It was not seeking to confer validity to arbitration agreements generally, a matter outside the scope of federal powers. Instead it picked out two important classes of transactions within the federal legislative domain and declared the effect of arbitration clauses in agreements concerned therewith.

Then in § 3 the statute deals with the conduct of suits in federal courts, again a subject matter of congressional power. The language becomes general: "any suit or proceeding", upon "any issue referable to arbitration under an agreement in writing for such arbitration" are the words. Congress is not limited, in legislating as to law suits in federal courts, to those suits involving matters where the substantive rights of the parties may be controlled by federal legislation. The generality of the language used in the statute does not suggest any self-imposed limitation. Nor do we think that the "congressional approval of arbitration"[3] should be so limited by implication, by a grudging type of construction carried down from the days of judicial hostility to all arbitration agreements.[4] We think it clear that the provisions of §

---

[2] "An Act To make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." 43 Stat. 883.

"§ 1. 'Maritime transactions' and 'commerce' defined; exceptions to operation of title.

" 'Maritime transactions,' as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce,' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

"§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate.

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"§ 3. Stay of proceedings where issue therein referable to arbitration.

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

[3] Brandeis, J., in Shanferoke Coal & Supply Corp. v. Westchester Service Corp., supra, 293 U.S. at page 453, 55 S.Ct. at page 315, 79 L.Ed. 583.

[4] "The purpose of that Act was deliberately to alter the judicial atmosphere previously existing."—Frank, J., in Kulukundis Shipping Co., S/A, v. Amtorg Trading Corporation, 2 Cir., 1942, 126 F. 2d 978, 985.

3 are not to be limited to the specific instances dealt with in § 2.

This view finds support in the discussion by Judge Learned Hand in Shanferoke Coal & Supply Corporation of Delaware v. Westchester Service Corporation, 2 Cir., 1934, 70 F.2d 297, 298, affirmed, 1935, 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583. We find no evidence that the dictum is weakened by subsequent decisions in other questions arising under the Act in the Second Circuit.[5] Indeed it seems to us to be strengthened by the holding that the instances where a stay may be granted under § 3 are not limited to those situations where arbitration may be compelled under § 4. On the other side, there is a dictum supporting the limitation in a decision upon a motion to dismiss a petition for the appointment of arbitrators in the Western District of Pennsylvania,[6] language of like effect in the Middle District,[7] and a considered discussion supporting the limitation by Judge Nields in the District of Delaware.[8] As indicated above, we think the Act is entitled to a construction which will accomplish its purpose, and should not be hedged about with imagined limitations, as has been done in some instances.[9]

### III.

The last point is whether the arbitration clause is or can be applicable where the plaintiff's claim is one to recover damages under the Fair Labor Standards Act. We do not think it significant that the present arbitration clause in the contract between the parties may have had its origin in dealings years before the statute was thought of. A claim for unpaid overtime wages seems clearly one "growing out of the relations of employers and employed," and squarely within the language of the arbitration provision of the contract. Whenever the language originated, it still states the existing agreement of the parties and should govern the situations which come within it.

▮ Is there anything about the Fair Labor Standards Act which removes claims under its terms from the arbitration clause? We may concede that Congress could have done so had it wished. It could have provided that any claim under the Act was to be enforced by lawsuit only, notwithstanding any agreement between parties for any other method of settlement. There is no such express language. The plaintiff points to a sentence in the section on "Penalties; civil and criminal liability." which he contends has the effect just described.[10] "Action to recover such liability may be maintained in any court of competent jurisdiction * * *" is the language used. We think the effect of this provision is to allow a suitor to proceed in federal court regardless of citizenship of the litigants and amount involved or to sue in a state court at his convenience. Similar statements are found in the Census Act of June 18, 1929,[11] the statute allowing recovery for violations of price regulations,[12] perhaps elsewhere. Three cases have been cited to us on the question: Voutrey v. General Baking Co., D.C.E.D. Pa.1941, 39 F.Supp. 974, is not in point. The other two seem to give a construction to an employment contract which supports the view advocated by the plaintiff here. City Bank Farmers Trust Co. v. O'Donnell, Sup.1943, 179 Misc. 770, 39 N.Y.S.2d 842; Bailey v. Karolyna Co. Limited, D.C.S.D. N.Y.1943, 50 F.Supp. 142. How close they are to the point cannot be told from the brief opinions for the provisions of the contract are not set out.

▮ We think the terms of the contract in this case are broad enough to cover the claim in litigation. And we see nothing in the wording of the Fair Labor Standards Act which precludes arbitration of claims arising under it. No doubt it creates rights which make a basis of a claim by an employee against an employer who violates it. So does any contract. A claim under the Act and a claim based on a contract,—each is based on a legal right which the claimant asserts against someone else. Arbitration is one way by which such a right can be enforced. There is no reason why it

5 As, for instance, the Kulukundis case, supra, or In re Pahlberg Petition, 2 Cir., 1942, 131 F.2d 968.

6 In re Cold Metal Process Co., D.C. 1935, 9 F.Supp. 992.

7 Karno-Smith Co. v. School Dist. of City of Scranton, Lackawanna County, D.C.1942, 44 F.Supp. 860.

8 Zip Mfg. Co. v. Pep Mfg. Co., D.C. 1930, 44 F.2d 184.

9 "The Act, like the state acts, is technically and restrictively interpreted by the courts, both as to its jurisdictional features and otherwise." 6 Williston on Contracts (Rev.Ed.1938) § 1920, f.n. 18.

10 29 U.S.C.A. § 216(b).

11 13 U.S.C.A. § 212.

12 50 U.S.C.A.Appendix § 925(e).

cannot be availed of to secure rights under the Fair Labor Standards Act just as well as a right arising out of a contract or imposed by law as a consequence of a tort.

Here again we should not choke the arbitration process which has been given congressional approval by the fetters of earlier judicial conceptions.

The order of the District Court is reversed and the case remanded for further proceedings not inconsistent with this opinion.