## WATKINS et al. v. HUDSON COAL CO.

### No. 1100.

District Court, M. D. Pennsylvania.

April 10, 1944.

954

James G. McDonough and J. Frank Connolly, both of Scranton, Pa., for plaintiff.

Francis D. Mahon and R. S. Houck, both of Scranton, Pa., for defendant.

WATSON, District Judge.

This is a suit by thirty-eight employees of the defendant corporation to recover amounts alleged to be due them for overtime work. The suit is brought under the Fair Labor Standards Act of June 25, 1938, 29 U.S.C.A. § 201 et seq. The complaint sets forth the claim of each plaintiff individually. The contract under which the plaintiffs were employed is not pleaded in the complaint but is pleaded in the defendant's answer.

The claim of each plaintiff is set forth in detail in the complaint. These individual claims allege the number of hours worked by the plaintiffs during several periods commencing October 24, 1938, and ending November 30, 1942, and state the number of hours in each period which plaintiffs allege were overtime hours. As to each period the "regular rate of pay" at which plaintiffs were employed (according to the theory of the plaintiffs) is set forth, and overtime pay is demanded for the number of hours in each period which the plaintiffs allege they worked in excess of the maximum hours provided by the Fair Labor Standards Act.

In its answer the defendant alleges that all of the plaintiffs were, throughout the periods in question, members of District 1 of the United Mine Workers of America; that the wages, terms and conditions of employment of plaintiffs were, at all times referred to in the complaint, fixed by contract between the United Mine Workers of America and the employers engaged in the Anthracite coal industry, designated as the "Anthracite Operators"; and that said contracts contain a provision for arbitration of "any difficulty or disagreement * * * growing out of the relation of employers and employed."

The prayer of defendant's answer is that plaintiffs be directed to proceed to arbitration of the issues presented by the complaint and the answer, and that all proceedings in this action be stayed until arbitration has been had in accordance with the terms of the contracts referred to. The basis of this prayer is the United States Arbitration Act of February 12, 1925, 9 U.S.C.A. § 1 et seq.

For the purpose of preliminary hearing on the issue as to arbitration, the parties entered into an agreement as to certain facts, among which are the following:

"(1) The several contracts pleaded in Defendant's Answer were made as therein alleged and the copies thereof attached to said Answer as exhibits are true and correct copies of the original contracts.

"(2) The defendant, The Hudson Coal Company, is a party to these contracts.

"(3) Plaintiffs were members of District No. 1 of the United Mine Workers of America at all times involved in these proceedings.

"(4) Plaintiffs were at all times employed in 'occupations continuously manned' within the meaning of that phrase as used in the last paragraph of section (3) of the Agreement of May 7, 1936 (Answer—Exhibit M—page 150).

"(5) Plaintiffs were employed at all times in occupations in and about defendant's mines necessary to the mining and preparation of anthracite coal for market in the capacities stated in the Complaint and Answer, and none of the power, electric or otherwise, produced in any plant in

which any of them worked was used in transportation other than in hauling the unprepared coal out of the mines to the breaker where it was prepared for market."

It has been tacitly agreed that if the contracts pleaded by the defendant are valid, this case must be controlled by the decision in Donahue v. Susquehanna Collieries Company, 3 Cir., 138 F.2d 3.

It is plaintiffs' position that the contracts in question are illegal and void for the reason that they are in violation of the Fair Labor Standards Act, in that: (a) they do not provide for the payment of overtime wages in accordance with said Act; (b) they contain provisions as to wages which are in violation of said Act; and (c) the contract of May 20, 1941 contains a waiver or release of overtime wages which accrued to plaintiffs under the provisions of the Fair Labor Standards Act prior to the effective date of said contract.

The position of defendant is that: (a) the contracts in question are legal and binding upon the plaintiffs; (b) that even though the provisions of the contracts relating to wages do not comply with the provisions of the Fair Labor Standards Act, these provisions are severable from the balance of the contract, particularly that provision thereof which provides for arbitration of disagreements; and (c) even though the provision of the contract of May ·20, 1941, providing for the "full settlement and satisfaction" of claims arising prior to the effective date of the contract may be in violation of the Fair Labor Standards Act, this provision of the contract is severable from the balance thereof and does not render the entire contract void and unenforceable.

On the effective date of the Fair Labor Standards Act, October 24, 1938, the wages, terms and conditions of employment of the plaintiffs were governed by contract between the United Mine Workers of America, hereinafter referred to as "the Union" and the employers engaged in the mining and preparation of Anthracite coal, hereinafter referred to as "the Operators", entered into May 7, 1936 and extended by written agreement entered into November 13, 1937 (Exhibits M and N of defendant's answer). By this contract, as well as by the other contracts to which reference is hereinafter made, "the terms and provisions of the award of the Anthracite Coal Strike Commission and subsequent Agreements made in modification thereof or supplemental thereto as well as the rules and decisions of the Board of Conciliation" are ratified, confirmed and continued for the term of the contract, and the provisions of the prior agreement between the Union and the Operators dated August 8, 1930 and effective up to the time when the agreement of May 7, 1936 went into effect, except as modified and amended by the latter agreement, remained in full force and effect.

No question is raised as to the validity and legality of the contract of May 7, 1936 at the time it was entered into; hence this contract, including the provision for arbitration contained therein, is binding on the plaintiffs unless it was rendered illegal by the enactment of the Fair Labor Standards Act.

In my opinion, the Act did not render this contract illegal. Although it may be that provisions contained in this contract relative to the pay to be received by the plaintiffs and others in the same category for work during hours in excess of those provided by the Act did not conform to the provisions thereof, the effect of the Act was not to render the contract illegal but merely to superimpose the provisions of the Act upon the provisions of the contract. Thus, after the enactment of the Act, the defendant was required to pay employees who worked overtime, one and one-half times the regular rate of pay provided in the contract. The only ground upon which the plaintiffs claim the contracts in question to be illegal and void is that they are contrary to the Act and the public policy therein expressed, but, since the contract was entered into before the Act was passed and before the public policy was expressed, there can be no question as to its validity and enforceability, subject to the terms of the Act. Hence, it follows that as to overtime wages allegedly earned during the period from October 4, 1938 to May 27, 1939, the issues in question must be submitted to arbitration as provided in the contract. Donahue v. Susquehanna Collieries Company, supra.

During the period from May 27, 1939 to April 30, 1941, the plaintiffs were employed under a contract between the Union and the Operators entered into May 26, 1939 (Exhibit O of defendant's Answer). In that contract the wages, hours and conditions of employment relative to employees in the Anthracite industry remained substantially the same as under the agreement

of May 7, 1936, except as to employees exempt from the maximum hours provisions of Section 3 of that agreement. As to these, the following provision was made in the contract of May 26, 1939:

"(6) The case of employees exempt from the maximum hour provisions of Section (3) of the Agreement of May 7, 1936, as covered by subsequent interpretation of the Board of Conciliation, whose rates received the seven-hour wage adjustment under the said agreement, and who are affected by the Federal maximum hour and minimum wage legislation, shall be referred to the Board of Conciliation. The Board of Conciliation, exclusive of the umpire, is authorized and instructed to make a comprehensive study of the problem and work out an arrangement within ninety days of date of this agreement covering such employees on the basis that the weekly earnings of such employees shall be equal under this agreement to the earnings of such employees under the rates now in effect, as provided under the Agreement of May 7, 1936, for equal time worked."

Pursuant to this provision of the agreement, the Board of Conciliation met and adopted a resolution providing as follows:

"Whereas, Section (3) of the Agreement of May 7, 1936, as covered by subsequent interpretation of the Board of Conciliation, exempted certain classifications of employees from the maximum hour provisions of that agreement; and

"Whereas, such classifications, however, were given the advantage of the seven-hour wage adjustment in the same manner as all other employees; and

"Whereas, such employees were to work the going overtime in such occupations at the new seven-hour rate; and

"Whereas, in order to determine the case involving such employees who are affected by the Fair Labor Standards Act of 1938, the Joint Conference in the Agreement of May 26, 1939, referred the matter to the Board of Conciliation to work out an arrangement covering such employees on the basis that their weekly earnings shall be equal under the agreement now in effect to the earnings of such employees under the Agreement of May 7, 1936, for equal time worked; and

"Whereas, the underlying thought of the Joint Conference and of the agreement is to protect the earnings of such employees and at the same time impose no additional cost on the operator because all such employees received the benefit of the seven-hour wage adjustment in 1936; and

"Whereas, the Board of Conciliation pursuant thereto has investigated and given consideration to the matter and has decided on the following general basis:

"(1) In compliance with the basis hour and rate provision of the Fair Labor Standards Act of 1938, which provides for a maximum of forty hours per week in October, 1940, plus punitive rates for time in excess thereof, it is agreed that the forty hours per week shall be the basis for a formula, which will produce earnings that shall be the same as former earnings of such employees for equal time worked:

"(2) It is further understood that if any inequity or inequality shall arise which adversely affects the normal weekly earnings of any employee or number of employees in the classification affected, or adversely affects the cost of an operator, it shall be subject to correction by the Board of Conciliation;

"(3) It is further understood that this formula shall in no manner interfere with or set aside any of the basic provisions of the agreement and is made without prejudice to any similar question or questions that may arise; therefore

"Be It Resolved, by the Board of Conciliation, that the foregoing basis be adopted.

"Adopted by the Board of Conciliation, September 5, 1939."

The above provision of the contract and the resolution relate to the wages to be paid to the plaintiffs in this case. As to these provisions, the plaintiffs take the position that they are illegal and void because they are in violation of the Fair Labor Standards Act and the public policy expressed therein, and that, in view of the illegality of these provisions, the whole contract including the arbitration clause is illegal and void.

The defendant, pursuant to the contract and the resolution, put into effect on November 1, 1939, a formula which would produce the same wages to the employees affected as were paid to them under the agreement of May 7, 1936 for equal time worked.

Plaintiffs' position with respect to this period is that the agreement and the resolution adopted pursuant thereto are illegal in that they attempt to circumvent the pro-

visions of the Fair Labor Standards Act and that under the formula adopted by the defendant, the plaintiffs did not receive "earnings" equal to their "earnings" under the Agreement of May 7, 1936.

Neither of these arguments is well founded. The agreement and the resolution were voluntarily adopted by the representatives of the plaintiffs and the defendant. There is no question of fraud or over-reaching. The stated purpose of both was to comply with the Act while at the same time limiting the earnings of the plaintiffs to the same amount as they had earned under the agreement entered into prior to the passage of the Act. The only requirements of the Act pertinent to this case are that contracts of employment establish a regular rate of pay which is equal to the minimum rate provided by the Act and that employees who work more than the maximum hours provided therein be paid one and one-half times the regular rate for the excess hours. The Act does not require any increase in wages to those already receiving more than the minimum, as the plaintiffs here already were. Walling v. A. H. Belo Corp., 316 U.S. 624, 62 S.Ct. 1223, 1226, 86 L.Ed. 1716.

It seems clear that the effect of the agreement and the resolution was to authorize each employer in the industry to adopt any formula which would comply with the Act and would, when applied to the employees affected, produce the same earnings as those earned under the terms of the prior agreement. To comply with the Act such formula would have to provide a "regular rate of pay" for each employee and also provide for the payment of one and one-half times that rate for hours in excess of the maximum. There is no doubt that a formula producing the result desired and complying with the Act could be worked out.

The Court is not at this time concerned with the formula adopted by the defendant pursuant to the resolution of the Board of Conciliation. The only question before me is whether the contract in question is illegal. Having found that the contract is legal, the issues presented must be referred to arbitration as provided therein. The questions raised by plaintiffs relative to the formula adopted by the defendant and the proper interpretation of the term "earnings" as used in the resolution are for the determination of the arbitrators, and their decision with respect to these questions will have to be made in the light of the Fair Labor Standards Act.

The final period of employment as to which overtime wages are claimed is May 1, 1941 to November 30, 1942. During that period the plaintiffs were employed under a contract entered into May 20, 1941 (Exhibit P of Defendant's Answer). This contract contained the usual provisions continuing in effect the Award of the Anthracite Coal Strike Commission, all subsequent agreements and the rulings and decisions of the Board of Conciliation, excepted as modified and amended by the new agreement. It provided a general increase in wage rates to all employees of seven and one half (7½) per cent. for the period May 1, 1941 to September 30, 1941, and ten (10) per cent. for the period October 1, 1941 to April 30, 1943. As to employees in the classes to which plaintiffs belong the agreement contains the following provision as to wages:

"(7) The hourly rates of employees, exempted from the provisions of the seven-hour day under the Agreement of May 7, 1936, who have not been adjusted to a forty-four hour basis and who regularly work a fixed number of hours of forty-two hours per week or more, shall be. established for the period May 1, 1941, to September 30, 1941, by adding 7½% to their weekly earnings as calculated under the provisions of said agreement and dividing the sum by the hours regularly employed weekly plus one-half the hours worked in excess of forty hours; and for the period October 1, 1941 to April 30, 1943, by adding 10% to their weekly earnings as calculated under the provisions of said agreement and dividing the sum by the hours regularly employed weekly plus one-half the hours worked in excess of forty hours."

It seems clear that this provision is in strict compliance with the Fair Labor Standards Act. It provides a simple method for determining the regular rate of pay for each employee, and it provides for payment of one and one-half times this regular rate for all hours worked in excess of the forty-hour maximum. It grants the plaintiffs an increase in their rate of pay, and this increase is applied to the overtime hours.

Plaintiffs' argument, ingenious as it is, is based on two fallacies. The first of these is that the Fair Labor Standards Act requires the payment of greater com-

958

pensation than that paid prior to the Act. This is not so. Walling v. A. H. Belo Corporation, supra. The second fallacy is that the contract must provide a regular rate of pay for each employee, expressed in dollars and cents. There is no such requirement. In the present case it would be most impractical to so provide. The agreement is made for many thousands of employees of various companies. The rates paid vary according to the duties performed. If each new contract were required to contain a dollar and cents rate for each employee or class of employees, the work involved would be infinitely increased to no useful purpose. So long as the contract provides a proper method of computing the regular rate of pay, it is of no moment that such rate is not expressed in so many figures.

It is finally argued that the following provision contained in the contract of May 30, 1941 is illegal and renders the whole contract illegal and void:

"The wage adjustments provided herein for employees customarily working forty-two hours a week, or more, constitute full settlement and satisfaction of all their claims, if any, for overtime against any signatory operator, arising out of employment prior to May 1, 1941."

I do not deem it necessary to pass upon the legality of this clause of the contract, which the plaintiffs label as a "waiver" and the defendant labels as an "accord and satisfaction". Suffice it to say that, whether the clause is legal or illegal, it is clearly severable from the balance of the contract and could not affect the legality of the arbitration provisions thereof. 12 Amer. Jurisprudence 737, Sec. 220.

It is my conclusion that the plaintiffs in this case were, during the periods covered by their claims, employed by the defendant under valid contracts containing arbitration clauses requiring the submission of their claims to the Board of Conciliation set up by the contracts. Donahue v. Susquehanna Collieries Co., supra.

In its answer defendant prays not only for stay of these proceedings until arbitration has been had but also for an affirmative decree directing the plaintiffs to proceed to arbitration. The power of this Court to grant the affirmative relief requested is limited to those cases over which the court would have jurisdiction under the judicial code of law, in equity, or in admiralty. U.S. Arbitration Act, 9 U.S.C.A. § 4. This is not such a case and, therefore, the order will be limited to the negative relief prayed.

Now, April 10, 1944, it is ordered that the trial of this action be, and it is hereby, stayed until arbitration has been had in accordance with the terms of the agreements set forth in the answer of defendant filed herein.