Edward D. THOMPSON, Jay Nollen, Kenneth A. Harder, Donald J. Sporrer, Lawrence W. Kennedy, Albert Weaver, James R. Morgan, Val Jean Johannsen, Raymond James Johnson, Luverne M. Hoffman, Carol W. Vennink, Ben J. Lackman, Larry James Larrison, and Lawrence J. Kabela, Appellees,

v.

IOWA BEEF PACKERS, INC., Appellant.

No. 54323.

Supreme Court of Iowa.

April 9, 1971.

P. L. Nymann, Dakota City, Neb., for appellant.

Raun & Franck, Denison, for appellees.

UHLENHOPP, Justice.

The main question presented in this appeal is whether workmen are required to attempt contract arbitration before they can sue for overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C.A. §§ 201–219.

The case was tried by ordinary proceedings without a jury. From the evidence the trial court could reasonably find that plaintiffs were maintenance men in defendant's plant near Denison, Iowa, during the period in question from April 28, 1965, to April 28, 1967. The plant was fairly new. During the first years many breakdowns occurred, necessitating much work by the maintenance men to avoid costly "down time." A bell was sounded when the men were needed. After the plant had been constructed, a lunch room for the maintenance men was added just off the kill floor so they could answer the bell more readily.

Under the contract between the union and defendant, the men were supposed to have a thirty-minute lunch period. The evidence clearly indicates, however, that until February of 1966, the lunch period existed more in name than in fact. On numerous occasions the men were obliged to answer bells during lunch. When they tried to eat lunch later, they would frequently be interrupted again by the bell.

Eventually one of the maintenance men undertook grievance procedure because he was not getting his lunch period. This precipitated a meeting by defendant's industrial relations officer with the maintenance men in February, 1966. That officer instructed the men that they were free to leave the premises during their lunch period.

The instructions appear to have been honored by the employer more in the breach than in observance. Breakdowns continued to occur, the production people needed immediate help from the maintenance men, the bell continued to be rung during lunch periods, and the maintenance men were expected to, and did, respond. The situation did not in fact change from what it had been. A procedure for two shifts of maintenance men was attempted, but did not prove efficacious.

On April 28, 1967, plaintiffs commenced this action for compensation for their lunch periods during the preceding two years. Shortly thereafter, the industrial relations officer dealt with the situation in a letter which was sent to each maintenance man. That letter, however, related to the future.

The collective bargaining contract between the union and defendant provided

grievance procedure including arbitration. The trial court overruled defendant's contention that the men had to arbitrate before they could sue, held on the facts that the maintenance men were actually on call during their lunch period for the two years in question, and granted the men compensation accordingly. Defendant appeals.

Defendant makes three contentions here. First, the workmen were not on call during lunch periods after the instructions were given in February 1966 to the effect they could leave the premises during such periods. Second, one of the workmen who said he always got his 30 minutes for lunch at some time during the day could not in any event claim he had not gotten his lunch periods. Third, the men had to attempt arbitration before they could sue.

I. Defendant's first two contentions are primarily factual and may be considered together. The trial court's findings of fact, if supported by substantial evidence, bind us. Rule 344(f) (1), Rules of Civil Procedure.

■■■ The legal principle regarding compensable time under FLSA for being "on call" was announced in Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L. Ed. 118. The decisions lay stress on whether the employees are actually free to pursue their own interests during their lunch period. If, in fact, the employer retains a hold on the employees for services when needed during a lunch period, so that the employees are not actually at liberty, the period constitutes compensable time. Glenn L. Martin Nebraska Co. v. Culkin, 197 F.2d 981 (8th Cir.); F. W. Stock & Sons v. Thompson, 194 F.2d 493 (6th Cir.); Wirtz v. Minton Rendering Co., 54 Lab.Cas. ¶ 31,876 (U.S.Dist.Ct.N.D.Tex.); Hofler v. Spearin, Preston & Burrows, Inc., 51 Misc. 2d 758, 273 N.Y.S.2d 863.

Here the men had 30 minutes for lunch. It hardly seems reasonable that the parties contemplated the men would drive from the plant to their homes or other places, eat, drive back, and be back on time. In fact,

a separate lunch building was provided for them on the premises, where they would hear the bell. On numerous occasions, both before and after February 1966, they were actually called during the lunch period. On cross-examination, defendant's witness LaFleur admitted with commendable candor, "If it was a serious break-down and the men were present, were readily accessible, they were asked to help with the break-down, yes; if they were on their lunch break. If they were called on their lunch break and given a lunch break later, the same thing could happen. They would have to answer the bell then, too." Defendant's witness Walker made somewhat similar admissions. Defendant's witness O'Brien, telling about frequent breakdowns before new equipment was installed in recent times, stated in a letter that "The maintenance men will remember the thousands of times they had to run because the boilers have dropped out"; "Many will remember the loss of steam that caused hours of dying time and lost profits"; "The maintenance men will remember the long hard hours of work put in on the sump under the coolers."

As to the period subsequent to February 1966, the trial court found the situation was no different than before—the men were actually on call. We do not say we would reach the same finding on the evidence, but substantial evidence supports the trial court's finding.

As to the contention that one workman actually got his 30 minutes for lunch each day, we think defendant misapprehends the rationale of Armour & Co. v. Wantock. The question is not whether a workman actually gets his 30 minutes without interruption. The question is whether he is on call during that period, or free to pursue his own interests. He may get his lunch times without interruption every day for a week or at various times throughout a given day. But if those times in fact belong to the employer, if the employee is not free but is actually subject to call during those times, then the times are compensable. The

trial court could reasonably find that such was the situation here.

We cannot sustain defendant's challenges to the findings of fact.

II. What about defendant's contention that plaintiffs had to attempt arbitration before they could sue? The contract under which plaintiffs worked contained a provision for four-step grievance procedure culminating in binding arbitration. Plaintiffs did not pursue that course but brought their complaint directly to court. Did they have the choice of arbitration or litigation, or were they obliged to try arbitration first?

■■ Defendant is engaged in interstate commerce, and substantive federal labor law applies. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370. The present controversy is undoubtedly arbitrable. Donahue v. Susquehanna Collieries Co., 138 F.2d 3 (3rd Cir.). Agreements to arbitrate may ordinarily be specifically enforced. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

As a general rule, federal labor policy requires that employees seeking to assert grievances must initially attempt to use contract grievance procedure including arbitration. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972; Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580. These decisions are founded on § 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C.A. § 185(a).

In accordance with this general rule, federal courts of appeal have held that employees must attempt to arbitrate FLSA claims before they can come to court. Donahue v. Susquehanna Collieries Co., supra; Watkins v. Hudson Coal Co., 151 F.2d 311 (3rd Cir.); Evans v. Hudson Coal Co., 165 F.2d 970 (3rd Cir.); Beckley v. Teyssier, 332 F.2d 495 (9th Cir.). Some federal and state trial courts had previously held to the contrary. Annot., 24 A.L.R.2d 752.

■ The United States Supreme Court does not appear to have spoken on the problem as to FLSA claims, but it recently decided U. S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456. A federal statute which antedates the Labor Management Relations Act, requires a master or owner of a vessel to pay seamen promptly, failing which the seamen are entitled to recover "two days' pay for each and every day during which payment is delayed * * * which sum shall be recoverable as wages in any claim made before the court * * *." 46 U.S.C.A. § 596. In Arguelles, a majority of the Court thought that statute indicated Congressional intent to permit a seaman to sue without first attempting arbitration which prevailed over Congressional intent favoring prior arbitration generally.

Does the Fair Labor Standards Act indicate similar Congressional intent, leading to the belief that the United States Supreme Court will apply Arguelles to FLSA cases? We are inclined to think so, although the question is close.

The Fair Labor Standards Act too antedates the Labor Management Relations Act. It also contains provisions for court proceedings and penalties, indeed, considerably more elaborate provisions than the statute involved in Arguelles. Under FLSA, an employer is liable to an employee for overtime pay and "an additional equal amount as liquidated damages." Action to recover such amounts "may be maintained in any court of competent jurisdiction". An employee may bring a class action with consent of the class—for himself "and other employees similarly situated." A plaintiff who is successful is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." The Secretary of Labor is authorized to supervise payment of unpaid overtime compensation owing an employee. The Secretary may sue to recover such overtime for an employee when so requested by him. All of these rights are contained in § 16 of FLSA, 29 U.S.C.A. § 216. In addition,

the federal district courts have broad jurisdiction to enjoin violations of FLSA requirements. § 17, 29 U.S.C.A. § 217.

As stated, the federal decisions generally requiring arbitration are founded mainly on § 301(a) of the Labor Management Relations Act, giving federal courts jurisdiction to enforce collective bargaining contracts—including arbitration clauses of such contracts. We doubt that the general Congressional intent favoring arbitration can stand against the specific Congressional intent which is manifest in the Fair Labor Standards Act provisions giving employees strong and detailed rights in court. We think Congress intended that workmen should have free access to the courts in FLSA cases. We are the more persuaded of that view by the broad Congressional policy expressed in § 2 of FLSA, 29 U.S.C.A. § 202. There the objectives of the act are set forth, and those objectives encompass more than simply wage relief for employees; they include broad economic considerations—improvement in commerce among the states. The remedies provided by the act are part of the Congressional scheme to obtain employer compliance with the act and hence achievement of those broader objectives. We believe that if Congressional intent to allow a seaman to arbitrate or sue at his option is manifest in the seaman's act involved in Arguelles, as the Court held there, then an intent to give workmen such an option is also manifest in the Fair Labor Standards Act.

Affirmed.

BECKER, LeGRAND and REES, JJ., concur.

MASON, J., concurs in result.

STUART, J., and MOORE, C. J., dissent.

RAWLINGS, J., takes no part.

STUART, Justice (dissenting).

I respectfully dissent from division II and the result. As a consequence, I would not reach the merits of the case. Federal law applies. My study of the federal cases leads me to conclude that plaintiffs were required to exhaust the grievance procedures, including arbitration, contained in the collective bargaining agreement covering the plant where they were employed before they could institute this action for overtime pay under the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219 (FLSA).

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available." Republic Steel Corporation v. Maddox (1965), 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580, 583.

Under federal law, agreements to arbitrate may be specifically enforced. Local Union No. 721, etc. v. Needham Packing Co. (1963), 254 Iowa 882, 885, 119 N.W.2d 141, 142; United Steelworkers of America v. American Mfg. Co. (1960), 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co. (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel and Car Corporation (1960), 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. at 582–583, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417–1418; quoted in Local Union No. 721, etc. v. Needham

Packing Co. (1967), 260 Iowa 908, 912, 151 N.W.2d 540, 543.

Plaintiffs do not quarrel with these general rules but claim that as their rights arise out of a federal statute rather than out of the collective bargaining contract they have the right to elect whether to file suit or follow the grievance procedures in the agreement. The narrow issue is whether a claim for overtime wages under the FLSA is an exception to these general rules.

Although the United States Supreme Court has not decided this issue, the federal circuit courts that have considered it hold grievance procedures must be exhausted before these statutory rights can be enforced in the federal courts. Beckley v. Teyssier (9th Cir. 1964), 332 F.2d 495; Evans v. Hudson Coal Co. (3rd Cir. 1948), 165 F.2d 970; Watkins v. Hudson Coal Co. (3rd Cir. 1945), 151 F.2d 311; Donahue v. Susquehanna Collieries Co. (3rd Cir. 1943), 138 F.2d 3; Anno. 24 A.L.R.2d 754, 764–766, 779–780.

Earlier New York and federal district court cases to the contrary have not been followed. Bailey v. Karolyna Co. (D.C. N.Y.1943), 50 F.Supp. 142; Voutrey v. General Baking Co. (D.C.Pa.1941), 39 F. Supp. 974; Garrity v. Bagold Corp. (1943), 180 Misc. 120, 42 N.Y.S.2d 257, mod. on other grounds 267 App.Div. 353, 46 N.Y. S.2d 637; McClintock v. Garment Center Capitol, Inc. (1943), 112 NYJL 1022, CCH Lab.Cas. Par. 61,814; Re City Bank Farmers Trust Co. (1943), 179 Misc. 770, 39 N.Y.S.2d 842.

The FLSA does not provide that such rights *shall* be enforced in the courts. If it did, a collective bargaining agreement providing for arbitration would be ineffective. In the absence of a specific prohibition, the parties may agree between themselves how these rights shall be enforced.

"Is there anything about the Fair Labor Standards Act which removes claims under its terms from the arbitration clause? We may concede that Congress could have done so had it wished. It could have provided that any claim under the Act was to be enforced by lawsuit only, notwithstanding any agreement between parties for any other method of settlement. There is no such express language. * * *

"* * * [W]e see nothing in the wording of the Fair Labor Standards Act which precludes arbitration of claims arising under it. No doubt it creates rights which make a basis of a claim by an employee against an employer who violates it. So does any contract. A claim under the Act and a claim based on a contract,—each is based on a legal right which the claimant asserts against someone else. Arbitration is one way by which such a right can be enforced. There is no reason why it cannot be availed of to secure rights under the Fair Labor Standards Act just as well as a right arising out of a contract or imposed by law as a consequence of a tort." Donahue v. Susquehanna Collieries Co. (3rd Cir. 1943) 138 F.2d 3.

In Beckley v. Teyssier (9th Cir. 1964), 332 F.2d 495, plaintiffs brought an action in the federal court to recover overtime pay for traveling to and from work under the FLSA. The proceedings were stayed by the district court. The circuit court affirmed saying:

"The appellants contend that since they seek recovery under the provisions of the Fair Labor Standards Act and not under the Collective Bargaining Agreement, the district court erred in staying the civil action pending arbitration under the Collective Bargaining Agreement. Appellants support such contention by arguing that whether the time spent by them in traveling to and from the barracks to the job site constitutes hours worked under the Fair Labor Standards Act is a legal question which must be determined by the courts without reference to the provisions of the Collective Bargaining Agreement, and presents a question which cannot be

determined by an arbitrator. Appellants cite no provision of the Fair Labor Standards Act which precludes arbitration of claims arising under it. We have found none. * * *

"It is clear to us that the claims of appellants are ones growing out of the relation of employer and employee and necessarily involve the application and interpretation of the contract provisions above quoted, and therefore fall squarely within Article V of the Collective Bargaining Agreement. See Evans v. Hudson Coal Co., [14 LC 64,318] 165 F.2d 970 (3rd Cir. 1948). To sustain appellants' contention would be to emasculate the arbitration provisions contained in the Collective Bargaining Agreement."

The United States Supreme Court has approvingly referred to this line of cases. "The reports of both Houses on that Act [Federal Arbitration Act] stress the need for avoiding the delay and expense of litigation, and practice under its terms raises hope for its usefulness both in controversies *based on statutes* or on standards otherwise created." Wilko v. Swan (1953), 346 U.S. 427, 431–432, 74 S.Ct. 182, 185, 98 L.Ed. 168, 174. (Emphasis added)

It is clear to me that if plaintiffs had brought this action in federal court subject to the Federal Arbitration Act, 9 U.S.C.A. § 3, proceedings would have been stayed pending arbitration. Here, defendant asks for dismissal of the suit because plaintiffs failed to exhaust the grievance procedures of the collective bargaining agreement.

Is the obligation to exhaust the internal remedies in a collective bargaining agreement modified when a judgment is sought on jurisdictional grounds in a state court? I have found no United States Supreme Court decisions on this question involving statutory rights under the FLSA, but an action in a state court by an individual for severance pay claimed to be due under the terms of a collective bargaining agreement was dismissed for failure to exhaust grievance procedures. Republic Steel Corp. v.

Maddox (1965), 379 U.S. 650, 653, 85 S.Ct. 614, 616, 13 L.Ed.2d 580, 583–584.

In his opinion Mr. Justice Harlan sets forth the reasons for the strong federal policy favoring arbitration as follows:

"But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant. * * * Union interest in prosecuting employees grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so.

"A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.' Local 174, Teamsters etc. v. Lucas-Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593, 599."

These considerations are just as strong under a claim for overtime wages under the

FLSA as they would be under a contract provision. There is less reason to permit a lawsuit here than in Maddox where the claim was for severance pay, the plant was closed and no one held the position of foreman any longer with whom to initiate grievance procedures.

Any distinction between the instant case and Republic Steel Corporation v. Maddox must be based on the fact that plaintiffs' rights here are based on statute (FLSA) and plaintiff's rights in Maddox were based on the contract.

I agree with the majority that U. S. Bulk Carriers, Inc. v. Arguelles (decided by the United States Supreme Court January 13, 1971) offers guidance on this question, but it guides me to the opposite result.

There a seaman brought an action in the federal district court for wages and a penalty alleged to be due under the provisions of 46 U.S.C. § 596, which permits seamen to sue for wages in federal courts. The majority opinion (five justices) is based on statutory construction and reaches the conclusion that Congress in section 301 (a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) did not intend to deprive seamen of a remedy they had had since 1790. The opinion held plaintiff could either sue in the federal courts or invoke the grievance procedures of the collective bargaining agreement.

Justice Harlan, one of the majority, concurred specially stating that the cases of Smith v. Evening News Ass'n (1962), 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246; Republic Steel Corp. v. Maddox, supra; and Carey v. Westinghouse Electric Corp. (1964), 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed. 2d 320, "evince the crucial role of the federal judiciary in forging the proper relationships among available arbitral, administrative, and judicial forums for vindicating contractual and statutory rights of employers, unions, and employees. *In light of these cases, I cannot infer, from the mere provision by Congress of a federal judicial forum for enforcement of the wage claims of a subclass of workers' wages, that this Court is foreclosed from requiring arbitration under the collective-bargaining contract.*" (Emphasis added)

He makes the distinction between an individual's claim for wages based "simply on a contract" (Maddox) and a claim for wages growing out of a federal statute (Arguelles and the instant case) and states:

"Where, however, the § 301 dispute implicates federal statutory rights, it is incumbent upon this Court to fashion the relationships among forums according to an analysis of the policies underpinning both § 301 and the federal statute the employee invokes, rather than simply transposing *ipso facto* the Court's labor arbitration jurisprudence."

He concluded: "And the difficulties of analyzing the respective boundaries of the contractual right and the statutory right forbode ill for the efficient resolution of disputes implicating both the contract right and the federal statutory right. But the matter is not one to be decided abstractly; it may well be that certain types of federal statutory benefits will lend themselves to arbitration or splitting without an unacceptable sacrifice in competing policy interests.

"However, this is not such a statute, because the *very essence of the legislative policy at stake here is ensuring promptness in the payment of wages.* I think it obvious that the least desirable of all solutions would be to create a necessity for suits in both forums. In this circumstance, I think conflicting congressional policies are best reconciled by construing 46 U.S.C. § 596 and § 301 of the Labor-Management Relations Act as securing to the seaman an option to choose between arbitral and judicial forums where he states a claim under both the contract and 46 U.S.C. § 596." (Emphasis added)

Justice White joined by Brennan, Stewart and Marshall, dissented stating: "In Textile Workers Union v. Lincoln Mills, 353

U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), it was held that federal courts have jurisdiction to specifically enforce the arbitration provisions of the collective-bargaining agreement. And it has been clear at least since Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), that absent extraordinary circumstances not alleged here, contractual grievance procedures must be exhausted before suit can be brought."

On the distinction between contract and statutory rights he said: "nor until now has there been any principle which requires contract rights to be resolved internally but directs statutorily created remedies to be presented to the court, at least where, as here, the availability of the statutory remedy rests on disputed issues which are cognizable under the arbitration clause. In fact, this Court and lower federal courts have endorsed the suitability of arbitration to resolve federally created rights. In Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Court expressed 'hope for [arbitration's] usefulness * * * in controversies based on statutes * * *.' 346 U.S., at 432, 74 S.Ct. 182, at 185. And circuit courts of appeal both before and after passage of § 301 have required that FLSA employee's claims for liquidated damages under 29 U.S.C. § 216(b) for failure to pay overtime wages be referred to contractual grievance procedures before being presented to the court."

In view of the federal cases, the position of the minority and Justice Harlan's concurring opinion in Arguelles and his generally favorable view toward arbitration, I believe the federal law to be that congressional policies are best reconciled by holding that actions for wages under the FLSA are under the general rule that contract grievance procedures must be exhausted before an action can be brought in the courts. There is nothing in the majority opinion to indicate disagreement with this conclusion. The peculiar facts which persuaded the court Congress did not in-

tend to take away a traditional remedy in Arguelles are not present in this case.

I would dismiss the action as having been brought prematurely.

MOORE, C. J., joins in this dissent.