**UNITED OFFICE & PROFESSIONAL WORKERS OF AMERICA, CIO, v. MONUMENTAL LIFE INS. CO.**

Civ. A. No. 9645.

United States District Court
E. D. Pennsylvania.

Feb. 9, 1950.

Leonard B. Boudin, New York City, Albert B. Gerber, Philadelphia, Pa., for petitioner.

Theodore Voorhees, Philadelphia, Pa., for respondent.

McGRANERY, District Judge.

This is a petition of the United Office and Professional Workers of America, CIO, for an order pursuant to the United States Arbitration Act, 9 U.S.C.A. §§ 1–14, directing the respondent, Monumental Life Insurance Company, to proceed to the arbitration of a dispute between the parties under a collective labor agreement, meanwhile staying an action instituted by the company in this district.

The union and the company are parties to a collective labor agreement which includes a so-called "union shop" provision with respect to agents: " * * * every Agent presently or hereafter in the employ of the Employer shall become a member of the Union." The agreement also contains a check-off clause, with which the company complied until after the passage of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., when it was prohibited by Section 302, 29 U.S.C.A. § 186, from deducting dues from any agent's pay except on receipt of written authority from him. Some agents did not execute the necessary authorizations, and the union demanded that the company discharge such agents on the ground that they were no longer members of the union in good standing. The company refused on the ground that there was no maintenance of membership provision in the agreement obliging it to effect the discharges. The union sought to invoke the arbitration procedure which, it alleges, is applicable to the dispute. Whereupon the company filed a complaint in this Court asking for a declaratory judgment to the effect that the company is not required to discharge any of its employees under the terms of the col-

lective labor agreement and that the dispute is not arbitrable under the contract, and asking further that, pending its decision, the Court issue an order restraining the union and the American Arbitration Association from proceeding with the arbitration.

■ Following this, the union filed the petition referred to above; and the company resists the petition for a stay of proceedings, advancing the contention that Section 3 of the Arbitration Act provides no basis for the granting of such an order. This issue has been litigated at length in several courts, with sharp conflict in its resolution. See Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, 149 A.L.R. 271; Agostini Bros. Building Corp. v. United States, 4 Cir., 1944, 142 F.2d 854; Watkins v. Hudson Coal Co., 3 Cir., 1945, 151 F.2d 311; but cf., Gatliff Coal Co. v. Cox, 6 Cir., 1944, 142 F.2d 876; International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33. For an excellent compilation and discussion of the authorities, see Wilson & Co. v. Fremont Cake & Meal Co., D.C.Neb. 1948, 77 F. Supp. 364. But by the authority of the Court of Appeals for the Third Circuit, which is binding upon this Court, Donahue and Watkins cases, supra, Section 3 is not limited in such a manner as to preclude the granting of a stay order here.

■ Before the declaratory judgment proceedings may be stayed, however, this Court must be "satisfied that the issue involved in such suit or proceeding is referable to arbitration" under "an agreement in writing for such arbitration,"—Section 3 of the Arbitration Act. The issues involved in such suit are (1) the necessity, under the contract, of the discharge by the company of employees who failed to maintain membership in the union and (2) the arbitrability of the dispute. Under Section 3, the Court must determine whether the first issue is arbitrable, and hence there must be a determination of the second issue in the declaratory judgment proceedings. The essence of the matter, therefore, is the arbitrability of the first issue, and inasmuch as no one is asking for the

arbitration of the second, a determination of whether the arbitrability of the dispute is referable to arbitration is unnecessary.

The company contends that there is no agreement to arbitrate this dispute, because the section containing the union shop clause makes no reference to arbitration, and the arbitration provisions of Article XII of the contract are inapplicable. Article XII authorizes the union to establish, in each district office, a relations committee "to take up with the District Manager any matter pertaining to the working conditions of the employees." Such matters are to be reviewed by the district manager with the office committee. The union, upon receipt of the district manager's decision, may, then, if it is not satisfied, refer the matter for conference between the president of the employer and the president of the union, or their designees. And in the event that the union committee and the employer fail to reach an agreement, either party may refer the dispute to an arbitration board, the composition and procedure of which is described.

The company maintains that no district committee has complained of a "working condition" resulting from failure to discharge non-union members, and no appeal has been taken from any ruling of a district manager. The explanation given by the company for the alleged absence of the prerequisite to arbitration is that all recalcitrant agents are located in a few district offices which are completely non-union, and no complaint would be made by any relations committee in any such district. The company asserts that the dispute arises out of a "top level" disagreement between itself and the union, relating to a general issue, rather than out of a specific grievance on the district office level, as contemplated by Article XII.

For the most part, no doubt, the dispute has been on the "top level". But it appears from exhibits attached to an affidavit submitted by the union international representative that the union was also careful to take the necessary preliminary steps with respect to the arbitration of an issue involving a specific grievance on the district office level. A letter dated September

14, 1948, addressed to the president of the company and signed by the international representative, reads as follows:

"This is to record our dissatisfaction with the review of the grievance filed in the Toledo, Ohio District Office with respect to non-union members.

"We are hereby requesting a conference between a Committee of the Union and one representing the Company to further review this matter."

Upon its face, the letter indicates that an issue has been properly raised over a grievance on the Ohio district office. The company has not stated or demonstrated that the letter may be differently interpreted. Another letter, dated January 3, 1949, addressed to the president of the company and signed by the president of the union, refers to the letter of September 14 and states that "in view of our failure to reach an agreement" the union requests arbitration. The union, thus, has taken the necessary preliminary steps, on the district office level, to invoke the arbitration provisions of Article XII of the contract.

It would appear that the union's chief aim is to submit a general issue to arbitration: that is, to secure an interpretation of the union shop clause by a board of arbitration. But the question before the Court is whether that aim may be accomplished strictly within the terms of Article XII. If the union properly raises a grievance, under that article, "pertaining to working conditions of the employees", such issue is arbitrable within the prescribed procedure. If the union shop clause pertains to the working conditions of the employees, then a grievance with respect to the non-union membership of one or more employees in the Ohio district may ultimately ripen into an arbitrable issue. The union shop clause is clearly pertinent to the "working conditions" of the employees. Section 8(a) (3) of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 158(a) (3), makes the union shop a "term or condition of employment". While "condition of employment" may not be synonymous with "working condition", certainly the term or condition of union membership pervades the nature of the aggregate employment relationship sufficiently to "pertain" to working conditions. Therefore, a grievance concerning the non-union status of certain employees comes to arbitration on the union's demand that the non-union employees be discharged. The decision of a board of arbitration as to whether or not they must be discharged necessarily involves an interpretation of the union shop clause as the essential issue to be arbitrated.

 Inasmuch as the Court finds that the issue involved in the declaratory judgment proceedings is an issue referable to arbitration under the collective labor agreement, an order to stay the proceedings will be granted.

In addition to the stay order, the union also prays for an order directing the company to proceed to arbitration of the dispute, under Section 4 of the Arbitration Act. The company contends that, whatever the interpretation of Section 3 may be, the only contracts enforceable under Section 4 are those defined in Section 2, which provides for the validity and enforceability of arbitration provisions in maritime transactions and contracts evidencing a transaction involving commerce, as defined in the Act. Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 1934, 70 F.2d 297; Krauss Bros. Lumber Co. v. Louis Bossert & Sons, 2 Cir., 1933, 62 F.2d 1004. And since the commerce definition in Section 1 contains an excepting clause to the effect that " * * * nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce * * * ", therefore a collective labor contract, as an employment contract, is not enforceable under Section 4.

The Court of Appeals for the Third Circuit has not passed directly on this issue, although, as pointed out by the Court of Appeals for the Fourth Circuit in International Union United Furniture Workers v. Colonial Hardwood Flooring Co., supra, 168 F.2d at pages 36-37, under the Third Circuit's interpretation of Section 3, Donahue and Watkins cases, supra, it is possible to interpret Section 4 as being unlimited by the commerce definition of Sec-

tion 1, with its excepting clause.[1] Nevertheless, assuming the applicability of the excepting clause, the conclusion urged by the company does not follow.

 For a *collective labor contract* is not, of itself, *a contract of employment,* on the authority of the Supreme Court, J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762. Mr. Justice Jackson, speaking for the majority, said, 321 U.S. at pages 334-336, 64 S.Ct. at page 579:

"Contract in labor law is a term the implications of which must be determined from the connection in which it appears. Collective bargaining between employer and the representatives of a unit, usually a union, results in an accord as to terms which will govern hiring and work and pay in that unit. The result is not, however, a contract of employment except in rare cases; no one has a job by reason of it and no obligation to any individual ordinarily comes into existence from it alone. The negotiations between union and management result in what often has been called a trade agreement, rather than in a contract of employment. * * *

"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring. This hiring may be by writing or by word of mouth or may be implied from conduct. * * *

The individual hiring contract is subsidiary to the terms of the trade agreement * * *."

The Court of Appeals for the Fourth Circuit, in holding that the excepting clause applied to a collective labor agreement, International Union United Furniture Workers v. Colonial Hardwood Flooring Co., supra, said that the intention of the Congress was to steer clear of the compulsory arbitration of labor disputes. This Court considers, however, that the enactment of a law by the Congress providing for the enforcement of an arbitration contract "voluntarily and solemnly entered into"[2] between an employer and a union is no more objectionable than any other provision for the specific enforcement of contracts,[3] nor does it in any way approach compulsory arbitration. It is logical to conclude that the Congress was avoiding the specific enforcement of contracts for personal services.[4]

---

1. In addition, the union advances the interesting contention that the arbitration clause of the contract may be enforced under Section 301 of the Labor Management Relations Act of 1947, rather than under Section 4 of the Arbitration Act, thus requiring the jurisdictional element of interstate commerce, but unlimited by the excepting clause in the Arbitration Act definition of commerce.

2. The Senate committee referred to " * * the practical justice in the enforced arbitration of disputes where written agreements for that purpose have been voluntarily and solemnly entered into." Senate Report No. 536, 68th Cong., 1st Sess.

3. "Arbitration agreements are purely a matter of contract, and the effect of the bill is simply to make the contracting party live up to his agreement. * * * An arbitration agreement is placed upon the same footing as other contracts,

where it belongs." House Report No. 96, 68th Cong., 1st Sess.

4. The union urges a further ground for holding the excepting clause of Section 1 inapplicable here, in that the contract covers employees not "engaged in" interstate commerce. The term "involving commerce" in Section 2 is undoubtedly broader than the term "engaged in * * * commerce" used in the excepting clause of Section 1. See Polish National Alliance v. N.L.R.B., 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509. Thus, it is entirely possible that while a collective bargaining agreement with an insurance company "evidences a transaction involving commerce", the insurance agents themselves may not be "engaged in commerce." But though it may be that the unspecified group covered by the general phrase "other class of workers engaged in foreign or interstate commerce" is limited under the *eiusdem generis* rule by the specific categories of workers set forth, to the

This was the reasoning of a California court in interpreting a provision of the California Arbitration Act, Code Civ.Proc. § 1280, exempting from its operation contracts "pertaining to labor", an exception broader in terms than that of the Federal statute. Holding that a collective bargaining agreement was not within the scope of the exception, Levy v. Superior Court, 1940, 15 Cal.2d 692, 104 P.2d 770, 774, 129 A.L.R. 956, the court said: "There was undoubtedly a basic reason for excluding labor agreements. A contract to perform labor is not specifically enforceable * *. The same considerations pertaining to the personal relations between employer and employee would indicate that contracts between them should not be subject to the provisions of the arbitration title in the Code of Civil Procedure. But the considerations which would except contracts to perform labor from such proceedings do not exclude collective bargaining agreements."

Under the national policy favoring the enforcement of collective labor agreements through judicial and quasi-judicial processes rather than through the use of economic force, Labor Management Relations Act 1947, Section 1(b), it is well to interpret the Arbitration Act in such a manner as to encourage the effectuation of that policy, and to avoid "a grudging type of construction carried down from the days of judicial hostility to all arbitration agreements." Donahue v. Susquehanna Collieries Co., supra [138 F.2d 5].

Accordingly, an order will be entered, in accordance with this opinion, directing the company to proceed with the arbitration of the specific dispute pending between them, evidenced by exhibits C and E to the affidavit of Mr. George Hansen, international representative of the union, and further staying the declaratory judgment proceedings instituted in this Court by the company, pending the completion of the arbitration proceedings. The arbitration proceedings will, of course, be held within the jurisdiction of this Court.

exclusion of insurance agents, it cannot be decided on the record before me whether the particular agents here con-

cerned are engaged in interstate commerce.