**LUDLOW MANUFACTURING & SALES CO. v. TEXTILE WORKERS UNION OF AMERICA (CIO).**

**Civ. 1359.**

United States District Court
D. Delaware.
Sept. 22, 1952.

Robert H. Richards, Jr. (of Richards, Layton & Finger), Wilmington, Del., Lewis H. Van Dusen, Jr. and Allen L. Crouch, III (of Drinker, Biddle & Reath), Philadelphia, Pa., for plaintiff.

William E. Taylor, Jr. Wilmington, Del., Morris H. Goldstein and Bernard L. Barkan, Philadelphia, Pa., and Benjamin Wyle, New York City, for defendant.

William Marvel, U. S. Atty., and James L. Latchum, Asst. U. S. Atty., Wilmington, Del., Holmes Baldridge, Asst. Atty. Gen., J. Gregory Bruce and Jess H. Rosenberg, Dept. of Justice, Washington, D. C., for intervenor, United States.

RODNEY, District Judge.

This is an action brought by the plaintiff under § 301 of the Labor Management Relations Act of 1947[1] for damages resulting from an alleged violation by the defendant, Union, of a "no striking" clause of the collective bargaining agreement between the parties. The defendant, prior to answer, filed a motion to stay the proceedings pursuant to § 3 of the United States Arbitration Act[2] pending arbitration of an issue allegedly arbitrable under the provisions of the collective bargaining agreement between the parties. Argument on the motion to stay was had on April 19, 1951. Six days later, April 25, 1951, and still before answer, the defendant moved to dismiss the action because, inter alia, § 301 of the Labor Management Relations Act, under which the suit was brought, was unconstitutional.

On May 17, 1951, the court certified to the Attorney General, pursuant to 28 U.S.C. § 2403, that the constitutionality of the above recited Act had been drawn in question and subsequently the United States intervened as a party.

On April 4, 1952, the time for argument of the motion to dismiss was fixed for June 30, 1952, which hearing, as a convenience to parties, was held on July 29, 1952. On April 14, 1952, the plaintiff filed a motion for summary judgment. On July 28, 1952, prior to the argument, certain affidavits were filed by the defendant which will be hereafter somewhat discussed.

On July 29, 1952, three motions were heard, viz., 1. A motion of the defendant to dismiss the complaint; 2. A motion of the defendant for a stay of the proceedings; and 3. A motion of the plaintiff for summary judgment.

The motions will be considered in the order named and especially for the reason that the motion to dismiss presented questions as to the jurisdiction of the court which, in certain events, might make further consideration of other matters unnecessary.

1. The motion to dismiss the complaint was based upon four grounds.

a. The first ground of the complaint questioned the constitutionality of § 301 of the Labor Management Relations Act,[3] under which the action had been brought. In the briefs and at the argument it does not seem that the defendant contends that the cited statute is unconstitutional in the sense that Congress lacked the power to give to the court jurisdiction of the matter, but rather that the language used by Congress was inappropriate and insufficient for that purpose.

1. 29 U.S.C.A. § 185, 61 Stat. 156.
2. 9 U.S.C.A. § 3, 61 Stat. 669, 1947.
3. 29 U.S.C.A. § 185.

It is urged that the judicial power of the United States courts, insofar as this case is concerned and under Article III of the Constitution, is limited to cases where there is either a diversity of citizenship or where the right arises under the Constitution, treaties or laws of the United States. No diversity of citizenship is alleged or expressly relied upon in the complaint. The defendant contends that no jurisdiction exists under any "law of the United States" because, as it is argued, no substantive right is granted by the Statute but that the Statute concerned purely procedural matters. This precise question has been considered and decided in a number of cases in which it has been specifically held that the cited Act did create important substantive rights and provide proceedings for their enforcement.[4]

It is urged by the defendant that the cases determining the question, as cited in footnote 4, have not fully exhausted the reasoning upon which the conclusions are based and urges this court so to do. If this court disagreed with the uniform current of authority, then the reasons for such disagreement would be required, but such is not the case. This court does not flatter itself in the thought that its concurring reasoning is of paramount importance in any subsequent proceeding. I am of the opinion that the whole tenor of the cited Act created important substantive rights cognizable, under the Act, in this court, and therefore the present suit is one arising under the laws of the United States.[5]

b. The motion of the defendant to dismiss the complaint is based in part upon the fact that the complaint alleges the actions of the defendant as violative both of the collective bargaining agreement between the parties, therein set out in full, as well as certain provisions of the National Labor Management Relations Act of 1947. The defendant argues that such contention of the plaintiff alleges an unfair labor practice exclusively cognizable under the provisions of the National Labor Relations Act.

The present motion is one to dismiss the complaint. A complaint will never be dismissed unless it appears to a certainty that the plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. The present action is one to recover damages for a breach of a written contract between the parties and herein held to be cognizable in this court. The mere fact that the actions of the defendant may or may not make it amenable in another tribunal for other measures of redress cannot deny to the plaintiff his rights to the remedies solely available in this court.

c. Another reason for the motion to dismiss is somewhat analogous to the reason just considered. The defendant contends that because the actions of the defendant complained of, and especially in paragraph 6 of the complaint, constitute torts as well as the claimed breaches of the contract, as alleged by the plaintiff, a suit cannot be maintained without clear showing of the jurisdictional amount and diversity of citizenship. This point will not be greatly elaborated. It seems sufficient to say that if an action of a defendant does constitute a breach of a written agreement upon which a suit for damages has been brought, pursuant to express statutory authority, and which statutory authority dispenses with the requirement of diversity of citizenship and

4. Colonial Hardwood Flooring Co., Inc., v. International Union United Furniture Workers of America, D.C., 76 F.Supp. 493, affirmed 4 Cir., 168 F.2d 33; Wilson & Co. v. United Packinghouse Workers, D.C., 83 F.Supp. 162; Shirley-Herman Co. v. International Hod Carriers etc., 2 Cir., 182 F.2d 806, 808, 17 A.L.R.2d 609; Hamilton Foundry & Machine Co. v. International Molders & Foundry Workers, 6 Cir., 193 F.2d 209. See also Bakery & Confectionery Workers International Union v. National Biscuit Co., 3 Cir., 177 F.2d 684, note 1, and International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp., 342 U.S. 237, 72 S.Ct. 235.

5. It is not without interest that the present defendant, contending that the cited statute created no substantive rights, was itself the plaintiff in Textile Workers Union of America, C. I. O. v. Aleo Mfg. Co., D.C., 94 F.Supp. 626, and there successfully contended that substantive rights were granted by the statute.

amount in controversy, then such suit is not liable to dismissal because those same actions or conduct of the defendant could also be denominated as torts and subject to these same jurisdictional elements.

d. As an additional ground for dismissal of the complaint the defendant contends that the court is without jurisdiction over the subject matter because the issue involved is referable to arbitration.

This matter will not be here considered as it more properly falls with the separate motion for a stay pending arbitration to be subsequently herein discussed.

I am of the opinion that the motion of the defendant to dismiss the complaint must be denied.

2. Defendant's motion for a stay of proceedings will not be considered at length. When the motion was originally argued the plaintiff, in opposing the motion for a stay, relied upon a number of pertinent decisions outside of this Circuit. The defendant, in order to sustain its motion for a stay, relied upon Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, 149 A.L.R. 271, and Watkins v. Hudson Coal Co., 3 Cir., 1945, 151 F.2d 311. With Courts of Appeal divided as to construction, Congress re-enacted the Arbitration Act with unchanged text but modified coverage. Subsequently, the Court of Appeals of this Third Circuit, in Amalgamated Ass'n, etc., v. Pennsylvania Greyhound Lines, 1951, 192 F.2d 310, abandoned its earlier construction of the language of the Act and held that arbitration of a dispute growing out of a contract of employment cannot be required under U.S.C.A. Title 9. Subsequently, in Pennsylvania Greyhound Lines v. Amalgamated Ass'n, etc., 1952, 193 F.2d 327, 328, the Court of Appeals for this Third Circuit held that under the decision last cited "the Arbitration Act gives the District Court no authority to compel arbitration of a dispute arising out of a 'contract of employment' of a class of workers engaged in interstate commerce with such a contract of employment construed in the same opinion to include a collective bargaining agreement."

In view of these decisions I must refuse the motion for a stay of proceedings.

3. As heretofore stated the plaintiff, on April 14, 1952, filed its motion for summary judgment, which motion was set down for a hearing on July 29, 1952, in connection with the other motions then pending. The plaintiff contends that there is no genuine issue of fact involved and that it is entitled to a summary judgment. The defendant contends that a proper construction of Article III.C. of the bargaining agreement shows that the strike as called by the defendant was authorized by the language of the agreement. The material portion of Article III.C. of the agreement is set out in the footnote.[6]

It is admitted that the Union, on February 27, 1951, authorized the strike which is the basis of this action. The parties differ as to whether the strike was authorized under the provisions of the agreement.

The plaintiff contends that a notice for wage adjustment must be given in writ-

6. Agreement between Ludlow Manufacturing and Sales Co., Edge Moor Division, Edge Moor, Delaware, and Textile Workers Union of America, Article III.C.:

"Wage Revision: Except as changes may be made pursuant to the provisions of this Agreement there shall be no changes in present wage rates during the term of this Agreement, but all parties to this Agreement reserve the right to take up the question of a general wage adjustment upwards or downwards once during the term of this contract by giving a notice in writing at least sixty (60) days prior to February 15, 1951. Upon receipt of such notice the parties shall immediately negotiate the request. If notice is given as above provided and if within thirty (30) days after February 15, 1951, no agreement is reached as to a wage adjustment, then the Union shall not be under obligation to refrain from striking to induce agreement with its position on the matter of wages, and the Employer shall not be under obligation to refrain from a lockout to induce agreement with its position on the matter of wages. Such strike or lockout shall not be considered a breach of any term or provision of this Agreement. The matter of wage revision under the wage reopening provided for in this paragraph shall not be subject to arbitration unless mutually agreed to by all parties at the time."

ing at least 60 days before February 15, and that if no agreement is reached within 30 days after February 15, then neither party shall be under obligation respectively to refrain from striking or refrain from a lockout. The plaintiff concedes that a written notice for a wage adjustment had been given on December 14, 1950. It is conceded that no agreement was reached by February 15, 1951. The plaintiff therefore contends that no legal strike could have been authorized prior to 30 days after February 15, 1951, or until March 17, 1951, and that the strike authorized by the defendant on February 27 was an illegal strike.

The defendant contends that a proper construction of the contract means that if no agreement is reached by February 15, in such event the Union may call the strike at any time within the next ensuing 30 days or be thereafter estopped from striking. Succinctly, the plaintiff claims that the strike could not legally be called until 30 days after February 15, or until March 17, 1951, and that the strike admittedly called on February 27, 1951, was illegal; the Union claims that this strike could only legally be called within 30 days after the failure to reach an agreement on February 15, and that a strike on any day after February 15 and prior to March 17 on which no agreement had been reached was a legal strike, and therefore the strike on February 27 was of such a nature. To me it is entirely clear that the period from the notice of a desire to negotiate the wage adjustment to February 15 is the period fixed for negotiations and if no agreement is reached by February 15, then a further "cooling off" period of 30 days is provided before either party may apply economic force to compel agreement. The word "then" following the recital of the 30-day period after February 15 is of great significance because it indicates that such word was the indication of the first period when either party was entitled to use economic force either by strike or lockout.

It is true that the defendant had filed an affidavit bearing upon preliminary negotiations prior to the making of the bargaining agreement and thus seeks to construe the contract according to its understanding of those preliminary negotiations. It seems to be entirely clear that the intent of the parties must be gleaned from the instrument so solemnly entered into between the parties.[7]

I am entirely clear that the language of the contract in its exact terms and as affected by common usage clearly provides that no legal strike could have been authorized prior to expiration of 30 days after February 15, 1951, and that consequently the strike called on February 27, 1951, was in violation of the agreement.

In addition to its contention as to the construction of Article III.C. the defendant, Union, alternatively contends that there had been a prior breach of the contract by Ludlow which excused the Union from further compliance with the terms of the agreement.

The Union contends that on December 14, 1950, notice had been given to Ludlow for a general wage adjustment pursuant to Article III.C. of the contract. The contract provides "upon receipt of the notice the parties shall immediately negotiate the request." The Union contends that the negotiation as to the wage increase was not had "immediately" and not until 45 days later, viz., on January 30, 1951, and that this failure constituted a prior breach of the contract and a breach of such a material provision of the contract as would justify a breach by the defendant in the time of the strike even though such a strike should be construed to be a premature one as not especially authorized by the agreement.

The motion now being considered is a motion by the plaintiff for a summary judgment. This motion was filed April 14, 1952, after the motions of the defendant to dismiss the complaint, or alternatively for a stay of the proceedings, had been set for a hearing on June 30 and which hearing was eventually held on July 29, 1952. On July 28, 1952, the defendant filed two affidavits which for the first time introduced the failure of the plaintiff to promptly or immediately negotiate the revision of wages as the reason for the strike. I cannot say that the

7. 3 Williston on Contracts, Sec. 610.

date of filing the affidavits was an untimely one but must consider the timeliness of the interposition of the newly assigned reason for the strike. For some 15 months the strike and its reasons for its inception had been before the court as growing out of the diverging construction of Article III.C. of the contract. At no time during this period was the failure of the plaintiff to immediately arbitrate the wage revision suggested as a reason for the strike.

It is now urged that the claimed breach of the contract by the plaintiff caused by its failure to immediately negotiate the wage revision was such a breach of a material portion of the contract as would authorize a breach by the defendant in initiating the strike. It is urged that the materiality of the former breach by the plaintiff constitutes such a question of fact as would prevent the entering of a summary judgment.

It is true that often the materiality of a former breach by one party as furnishing an excuse for a subsequent breach by the other party does constitute a question of fact. The materiality of the former breach may at times be a mixed question of law and fact. Where, however, by the written agreement the two matters are severable and it plainly appears that the one breach would not be a necessary concomitant to the second, then the materiality of the former breach may become a question of law. We are thus remanded to a consideration of the language of the agreement.

Upon a giving of the notice of the desire for a negotiation of a general wage revision on December 14, the agreement provides that the parties shall "immediately" negotiate the request. This means that the parties shall negotiate without delay. The settlement of labor disputes is often attended with protracted hearings and time for negotiations are required. The contract in the present case seems specific. Notice for a revision of wages was required at least 60 days before February 15, 1951. When that notice was given and no settlement arrived at within 30 days after February 15, then the Union was under no obligation to refrain from striking. If the present plaintiff had "immediately" started to negotiate the wage revision after the notice of December 14 and negotiations had broken down for some reason or the revision been refused, then no provision seems to authorize an acceleration of the right to strike. It seems clear to me that the contract provided a specific time during which negotiations might be had, viz., 60 days prior to February 15 and 30 days thereafter, but there is no indication that the right to strike was accelerated in any event or was dependent in any way upon the negotiations for a wage revision except as to the date of the original notice for the revision and the passing of the stipulated time. I therefore must conclude that the failure to "immediately" commence negotiations for the wage revision after the notice of December 14 was not a material breach of the contract which would operate to excuse a subsequent breach or accelerate the time for a strike. It may well be the failure to immediately negotiate the wage revision might have constituted an unfair labor practice which would have been remediable under proper proceedings but with this I am not concerned. Negotiations were actually commenced before February 15, though no conclusions may have been reached. These facts and the further fact that until 15 months after the pendency of these proceedings and not until July 28, 1952, did the defendant even suggest the failure to promptly and immediately negotiate the request for wage revision as a reason for the strike, prompt me to determine that such delay was not a material breach by the plaintiff which would accelerate the right to strike. It therefore seems that there is involved no material issue of fact and summary judgment should be entered for the plaintiff unless, indeed, such judgment should not be entered at the present state of the record. The present motion has been filed and is being considered before answer of the defendant. It is true that in considering the granting of a summary judgment any practical doubt respecting the existence of a germane issue upon a material fact should be resolved against the party seeking the summary judgment. This is especially true when no answer has been filed. In the present case the brief of the defendant only

mentions an issue of fact to be raised by the answer as that same issue of fact that appears in the affidavits filed and as hereinbefore considered. It is true that the court has been informed by counsel that the answer, if filed, would contain a number of facts, and it is intimated that these may be in addition to the facts submitted in the affidavits. It remains true, however, that as construed by the court there now remains before this court no controverted question of fact. A suggestion that facts, while not now present, might be subsequently injected in the case, by answer or otherwise, would not seem to prevent the operation of the rule concerning summary judgments.

Rule 56(c), Rules of Civil Procedure, 28 U.S.C. states that the judgment should be rendered "forthwith" if the pleadings and other stipulated matters show that there is no genuine issue. This negatives the postponement of action on the motion awaiting the subsequent production of such issue.

Summary judgment on liability alone should be entered in favor of the plaintiff, leaving the matter of damages to be subsequently ascertained.

An appropriate order may be submitted.