TENNEY ENGINEERING, Inc. v. UNIT-
ED ELECTRICAL RADIO & MA-
CHINE WORKERS OF AMERICA,
(U.E.) LOCAL 437.

No. 10960.

United States Court of Appeals
Third Circuit.

Argued April 9, 1953.

Reargued Sept. 14, 1953.

Decided Oct. 16, 1953.

McLaughlin and Staley, Circuit
Judges, dissented.

Morton Stavis, Newark, N. J. (Gross & Blumberg, Newark, N. J., on the brief), for appellant.

Sidney O. Raphael, New York City (Ralph N. Solodar, Orange, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS, GOODRICH, McLAUGHLIN, KALODNER, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff, a manufacturing corporation, brought an action in the District Court for the District of New Jersey under Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C.A. § 185, commonly called the Taft-Hartley Act, against the defendant, a labor union, for damages for breach of contract. The breach alleged was a strike of the plaintiff's employees called by the defendant in violation of a collective bargaining agreement between the parties. The agreement contained an arbitration clause and the defendant moved for a stay of the suit pending arbitration, pursuant to Section 3 of title 9, United States Code, entitled "Arbitration".[1] The parties stipulated that the plaintiff is engaged in the manufacture of goods for sale in interstate commerce and that its employees, represented by the defendant, are all engaged in such manufacture and incidental plant maintenance. The district court denied the stay and the defendant thereupon took the appeal now before us.

This appeal presents the question whether Section 3 of title 9 is applicable to a collective bargaining agreement between parties in the situation of those in this suit. For if the section is not so applicable the action of the district court in denying a stay under it was right. The answer to this question in turn depends upon the construction which is to be placed upon the final clause of Section 1 of title 9[2] which reads "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." It has been held that the "contracts of employment" to

---

1. "§ 3. Stay of proceedings where issue therein referable to arbitration

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

2. "§ 1. 'Maritime transactions' and 'commerce' defined; exceptions to operation of title

" 'Maritime transactions,' as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

which this clause refers include collective bargaining agreements and that the clause is a limitation upon the operation of all the sections of title 9.[3] The majority of the court would not disturb this holding. The answer to the question accordingly turns upon whether the plaintiff's employees, who are engaged in the manufacture of goods for commerce and plant maintenance incidental thereto, are to be regarded as a "class of workers engaged in foreign or interstate commerce" within the meaning of the exclusionary clause.

The Arbitration Act, which was codified and enacted as title 9 of the United States Code in 1947, was originally enacted by the Act of February 12, 1925.[4] Our problem, therefore, is to determine the meaning which Congress in 1925 intended to give to the phrase "workers engaged in foreign or interstate commerce". Was it intended to include only those employees actually engaged in the channels of interstate or foreign commerce or did it comprehend all those engaged in activities affecting such commerce, such as the production of goods destined for sale in it? The legislative history furnishes little light on the point. The bill was drafted by the Committee on Commerce, Trade and Commercial Law of the American Bar Association and sponsored by the Association.[5] The only reference to the clause in question appears in a report of the Bar Association committee in which it was stated:

"Objections to the bill were urged by Mr. Andrew Furuseth as representing the Seamen's Union, Mr. Furuseth taking the position that seamen's wages came within admiralty jurisdiction and should not be subject to an agreement to arbitrate. In order to eliminate this opposition, the committee consented to an amendment to Section 1 as follows: 'but nothing herein contained shall apply to contracts of employment of seamen, railroad employees or any other class of workers engaged in foreign or interstate commerce.' " [6]

It thus appears that the draftsmen of the Act were presented with the problem of exempting seamen's contracts. Seamen constitute a class of workers as to whom Congress had long provided machinery for arbitration.[7] In exempting them the draftsmen excluded also railroad employees, another class of workers as to whom special procedure for the adjustment of disputes had previously been provided.[8] Both these classes of workers were engaged directly in interstate or foreign commerce. To these the draftsmen of the Act added "any other class of workers engaged in foreign or interstate commerce." We think that the intent of the latter language was, under the rule of ejusdem generis, to include only those other classes of workers who are likewise engaged directly in commerce, that is, only those other classes of workers who are actually engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it. The draftsmen had in mind the two groups of transportation workers as to which special arbitration legislation already existed and they

3. Gatliff Coal Co. v. Cox, 6 Cir., 1944, 142 F.2d 876; International Union United Furniture Workers v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33; Amalgamated Ass'n, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310; Pennsylvania Greyhound Lines v. Amalgamated Ass'n, 3 Cir., 1952, 193 F.2d 327.

4. 43 Stat. 883, 9 U.S.C. (1946 Ed.) § 1 et seq.

5. H.R. Rep. No. 96, 68th Cong., 1st Sess., p. 1.

6. 48 Am. Bar Assn. Rep. 287 (1923).

7. See Sec. 4554, R.S., 46 U.S.C.A. § 651, providing for arbitration by shipping commissioners.

8. Transportation Act, 1920, Title III, 41 Stat. 469. And see Sec. 7 of Railway Labor Act, enacted May 20, 1926, 45 U.S.C.A. § 157, providing for boards of arbitration.

rounded out the exclusionary clause by excluding all other similar classes of workers.

It must be remembered that the Arbitration Act of 1925 was drawn and passed at a time when the concept of Congressional power over individuals whose activities affected interstate commerce had not developed to the extent to which it was expanded in the succeeding years.[9] The area in which Congress then generally legislated is illustrated by the Federal Employers' Liability Act of 1908 [10] which applied to a railroad employee injured "while he is employed by such carrier [by railroad] in such [interstate or foreign] commerce". This language had been construed by the Supreme Court to include only employees engaged in interstate transportation or in work so closely related to it as to be practically a part of it.[11] In incorporating almost exactly the same phraseology into the Arbitration Act of 1925 its draftsmen and the Congress which enacted it must have had in mind this current construction of the language which they used.

Moreover when Congress later proceeded to exercise power under the commerce clause in the expanded area, to which we have referred, it continued to use the phrase "engaged in commerce" in the narrower sense while using other and more precise language to include activities merely affecting commerce. Thus Congress made the Fair Labor Standards Act applicable not only to employees "engaged in commerce" but also to those engaged "in the production of goods for commerce".[12] Congress, as the Supreme Court pointed out in McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, has thus used precise language in this field to carry out its intentions. We think it did so in the Arbitration Act of 1925.

In the case before us the plaintiff's employees are engaged in the production of goods for subsequent sale in interstate commerce. Thus while their activities will undoubtedly affect interstate commerce they are not acting directly in the channels of commerce itself. They are, therefore, not a "class of workers engaged in * * * interstate commerce" within the meaning of Section 1 of title 9. In this respect the present case is distinguishable from the two Pennsylvania Greyhound Lines cases decided by this court,[13] the bus line employees in those cases being directly engaged in the channels of interstate transportation just as are railroad workers. By the same token the present decision is consistent with our earlier decisions in Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, 149 A.L.R. 271; Watkins v. Hudson Coal Co., 3 Cir., 1945, 151 F.2d 311, certiorari denied 327 U.S. 777, 66 S.Ct. 522, 90 L.Ed. 1005; Donahue v. Susquehanna Collieries Co., 3 Cir., 1947, 160 F.2d 661, and Evans v. Hudson Coal Co., 3 Cir., 1948, 165 F.2d 970; in all of which the employees involved were engaged in the production of coal for later sale in interstate commerce.

The collective bargaining agreement here involved, not being excluded by Section 1, undoubtedly is within the purview of Section 3 of title 9. For it is settled that Section 3, being a purely procedural section, applies to all contracts for arbitration which may be involved in suits properly brought in the

9. Compare Hammer v. Dagenhart, 1918, 247 U.S. 251, 38 S.Ct. 529, 62 L.Ed. 1101; Child Labor Tax Case, 1922, 259 U.S. 20, 42 S.Ct. 449, 66 L.Ed. 817; with National Labor Relations Board v. Jones & Laughlin, 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; United States v. Darby, 1941, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609.

10. 35 Stat. 65, 45 U.S.C.A. § 51 et seq.

11. Shanks v. Del., L. & W. R. Co., 1916, 239 U.S. 556, 558, 38 S.Ct. 188, 60 L.Ed. 436.

12. 29 U.S.C.A. § 206.

13. Amalgamated Ass'n, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310; Pennsylvania Greyhound Lines v. Amalgamated Ass'n, 3 Cir., 1952, 193 F.2d 327.

federal courts and not merely to those maritime transactions or contracts evidencing transactions involving interstate, foreign or territorial commerce the arbitration clauses of which are made valid and enforceable by the substantive provisions of Section 2 of title 9.[14] We, therefore, do not have to decide whether the collective bargaining agreement between the present parties is a contract evidencing a transaction involving interstate commerce within the meaning of Section 2.[15] It may well be, however, that the concept of a "transaction involving commerce" contained in that section was intended to be broader in its scope than that of "workers engaged in * * * commerce", the language of the exclusionary clause of Section 1 which we have considered. It would seem reasonable to assume that Congress intended the benefits of Section 2 to apply to all contracts within its power to regulate under the Commerce Clause of the Constitution.

We conclude that the defendant is entitled to a stay of proceedings under Section 3 of title 9, United States Code, if the collective bargaining agreement between the parties, properly construed and applied, provides for arbitration of the issues raised by the complaint and if the defendant is itself not in default in proceeding with such arbitration. Since these questions cannot be determined on the present record the case must be remanded for their determination and the entry of an appropriate stay order if the defendant is found to be entitled to it.

Our conclusion that Section 3 is applicable makes it unnecessary for us to consider whether the defendant would be entitled to the relief it seeks, by way of a counterclaim for specific performance of the arbitration clause of the agreement, under Section 301 of the Labor Management Relations Act. In this connection see the well considered opinion of Judge Wyzanski in Textile Workers Union of America, C. I. O., v. American Thread Co., D.C.Mass.1953, 113 F. Supp. 137, which holds that such a remedy is afforded by that Act.

The order of the district court will be vacated and the cause will be remanded for further proceedings not inconsistent with this opinion.

BIGGS, Chief Judge (concurring).

This court should expressly overrule its decisions in Amalgamated Ass'n v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310, 313, and Pennsylvania Greyhound Lines v. Amalgamated Ass'n, 3 Cir., 1952, 193 F.2d 327, holding that a collective bargaining agreement is a "contract of employment" within the purview of Section 1 of the Act. A collective bargaining agreement is not a contract of employment. Cf. J. I. Case Co. v. National Labor Relations Board, 1944, 321 U.S. 332, 334–336, 64 S.Ct. 576, 88 L.Ed. 762. The exclusionary provisions of Section 1 are therefore inapplicable under the circumstances at bar.

The majority view, limiting, in this case, the exclusionary provisions of Section 1 to contracts of employment of workers engaged in transporting goods in foreign or interstate commerce, is too

---

14. Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, 149 A.L.R. 271; Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 1944, 142 F.2d 854; International Union v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33.

15. This question would arise only if the arbitration provision of the collective bargaining agreement here involved was invalid under the law of New Jersey where it was made and was to be performed. For in that case Section 2 of title 9 would make the provision valid and enforceable if it was a contract within the purview of the federal commerce power as defined in Section 2. If so, the federal rule of substantive law laid down by Section 2 would determine its validity. The fact is, however, that the provision for arbitration contained in the agreement here in question is not invalid or unenforceable under the law of New Jersey, N.J.S.A. 2A:24-1, which is substantially similar to Section 2 of title 9 U.S. C. No reference to Section 2 of title 9 need, therefore, be made.

narrow to be supportable. The exclusion embraces contracts of workers engaged in the production of goods for interstate commerce.

I cannot accept the plaintiff's contention that the legislative history of the Act compels the conclusion that the Act was intended to apply to commercial disputes only and not to labor disputes. The legislative history is of a kind that possesses little weight and should not be considered. Duplex Printing Press Co. v. Deering, 1921, 254 U.S. 443, 474, 41 S.Ct. 172, 65 L.Ed. 349, and United States v. Kung Chen Fur Co., 1951, 188 F.2d 577, 584, 38 Cust. & Pat.App. 107. The face of the statute must control the relief to be granted under it.

I agree with the majority that if the collective bargaining agreement provides for arbitration of the issues raised by the complaint and if Local 427 is not in default, it would be entitled to a stay under Section 3 of the Act. I, therefore, join in vacating the judgment of the court below and remanding the case for further proceedings.

Judge MARIS has authorized me to say that he agrees with me that a collective bargaining agreement is not a "contract of employment" within the purview of Section 1 of Title 9, properly interpreted.

McLAUGHLIN, Circuit Judge (dissenting).

Although the legislative history of the Arbitration Act is admittedly not helpful in directly determining what scope Congress intended to give the phrase "workers engaged in foreign or interstate commerce" as found in Section 1, it does show that the statute was enacted to provide solely for arbitration in commercial disputes. As the majority notes, the bill from which the Act emerged was originally drafted by the Committee on Commerce, Trade and Commercial Law of the American Bar Association. Mr. Piatt, the chairman of this committee, in testifying before the Senate subcommittee which considered the bill said, *"It was not the intention of the bill to make an industrial arbitration in any sense."* [16] (Emphasis supplied.) Discussion of the bill on the floor of Congress also indicates this purpose.[17]

It was not until about ten years ago that the statute was used to compel arbitration in labor cases involving collective bargaining contracts.[18] In Donahue v. Susquehanna Collieries Co., 3 Cir., 1943, 138 F.2d 3, this court had before it an appeal from a district court decision denying defendant-employer's application for the stay of a suit brought under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., pending arbitration pursuant to a collective bargaining contract. We reversed, holding that Section 3 of the Arbitration Act is not limited to those arbitration agreements set

16. Hearing before Subcommittee of Committee on the Judiciary, United States Senate, on S. 4214, 67th Cong., 4th Sess., p. 9 (1923).
   In 65 Harv.L.Rev. 1239 (1952), a discussion of Amalgamated Ass'n, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310, infra, it is said:
   "The decision on this point [that the exclusionary language of Sec. 1 of the Arbitration Act is a limitation on the entire Act] and the holding that a collective bargaining agreement is a 'contract of employment' are supported by *the statutory history which indicates that the Act was intended to apply only to commercial contracts and not to labor disputes.* See Hearings before Subcommittee of Committee on the Judiciary on

S. 4214, 67th Cong., 4th Sess. 9 (1923). The exception was added at the request of the president of a union which operated under collective agreements containing arbitration provisions. See Proceedings of the 24th Ann. Convention of the Int'l Seamen's Union 186 (1921)." (Emphasis supplied).

17. See, for example, 65 Cong.Record 984, 1931 and 11,080, 68th Cong., 2nd Sess. (1924).

18. In American Guaranty Co. v. Caldwell, 9 Cir., 1934, 72 F.2d 209, it was used in the case of a dispute between a general agent and his corporate employer concerning a contract entered into between the parties. No collective bargaining agreement was involved.

out in Section 2, including contracts evidencing transactions involving commerce, as appellee had urged.

We followed the Donahue opinion in Watkins v. Hudson Coal Co., 3 Cir., 1945, 151 F.2d 311, certiorari denied 327 U.S. 777, 66 S.Ct. 522, 90 L.Ed. 1005, where we affirmed an order entered under the authority of the Arbitration Act staying a Fair Labor Standards Act case brought by employees of another coal company. We there reiterated our conclusion that Section 3 is independent of Section 2, having meanwhile found support in a Fourth Circuit case which accepted Donahue.[19] We added, over the dissent of one of the panel, that Section 1 affects only the definition of commerce and is not a limitation on the entire Act, i. e., we reasoned that if a case was within Section 3 it did not have to depend upon Section 2, therefore any restriction in Section 1 relating to interstate commerce could not affect the case. This conclusion was in conflict with the Sixth Circuit in Gatliff Coal Co. v. Cox, 1944, 142 F.2d 876. Two later decisions of our court, Donahue v. Susquehanna Collieries Co., 3 Cir., 1947, 160 F.2d 661, and Evans v. Hudson Coal Co., 3 Cir., 1948, 165 F.2d 970, are consistent with the first Donahue appeal and the Watkins decision.

In Amalgamated Ass'n, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310, however, we abandoned our earlier position and held that Section 1 pervades the entire Arbitration Act.[20] We therefore affirmed the district court's order dismissing an action brought by a union to compel arbitration under the terms of a collective bargaining agreement.[21] That litigation as well as the second Greyhound suit, Pennsylvania

Greyhound Lines v. Amalgamated Ass'n, etc., 3 Cir., 1952, 193 F.2d 327, in which we also disallowed compulsory arbitration of a collective bargaining agreement,[22] presented no possible question of interstate commerce, the union members being employed by an interstate bus line. Prior to those actions, however, we had decided the four coal cases, in which the employees, as here, were engaged in the production of goods for shipment in interstate commerce, without once suggesting that the labor contracts there involved were not those of employees engaged in interstate commerce. Admittedly such a decision was not necessary under the view we then took of Section 1, but after the first Donahue case when the Gatliff Coal decision of the Sixth Circuit had challenged our interpretation of Section 1, it would seem that if the majority view in the instant case was sound law then we would have allowed compulsory arbitration by simply holding that the employees were not engaged in interstate commerce. Instead, Watkins and the other two coal cases continued to follow the reasoning of Donahue and because of it permitted compulsory arbitration. In effect those cases have been repudiated, but by the device of restricting the concept of interstate commerce we have completed the circle and are back where we started.

The view that there can be no compulsory arbitration under this Act of collective bargaining agreements of employees similarly situated to appellants finds solid support in the three other circuits which have considered the question. The Sixth Circuit Gatliff Coal case, supra, unlike our own coal cases, held that Section 1 was a limitation on

19. Agostini Bros. Building Corp. v. United States, 4 Cir., 1944, 142 F.2d 854.

20. See 65 Harv.L.Rev. 1239 (1952).

21. By this time it had been established that a collective bargaining agreement is a contract of employment within Section 1. Mercury Oil Refining Co. v. Oil Workers International Union, 10 Cir., 1951, 187 F.2d 980; International Union v.

Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F.2d 33; Gatliff Coal Co. v. Cox, 6 Cir., 1944, 142 F.2d 876. Amalgamated Ass'n, etc. v. Pennsylvania Greyhound Lines, 3 Cir., 1951, 192 F.2d 310, expressly so held.

22. In the first case it was the union which sought to enforce arbitration, in the second, the employer.

the whole Act. Cox, the plaintiff, *who was employed in defendant's power house*, brought suit to recover wages due him under a collective bargaining agreement. Defendant moved to stay the proceedings pending arbitration. The denial of that motion was affirmed on appeal, the court holding that the agreement was within the exception of Section 1. Implicit in that decision and necessary to the holding is the determination that the contract was that of an employee engaged in interstate commerce.

International Union v. Colonial Hardwood Flooring Co., 4 Cir., 1948, 168 F. 2d 33, a case very similar to the instant one, was a suit by an employer under the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185 et seq., to recover damages on account of a strike. The Fourth Circuit affirmed the denial of the defendant union's motion to stay the proceedings so that there could be arbitration pursuant to the Arbitration Act, the court holding that the collective bargaining agreement was within the exclusionary clause of Section 1. The members of the defendant union *were employed in plaintiff's woodworking establishment* in the city of Hagerstown, Md.[23] There again the implicit holding is that the employees were engaged in interstate commerce within the Arbitration Act. The court said at 168 F.2d 36:

"It is perfectly clear, we think, that it was the intention of Congress to exclude contracts of employment from the operation of all of these provisions [Sections 2, 3 and 4 of the Act]. Congress was steering clear of compulsory arbitration of labor disputes * * *."[24]

In Mercury Oil Refining Co. v. Oil Workers International Union, 10 Cir., 1951, 187 F.2d 980, the labor organization brought an action to enforce an arbitration award made under the terms of its collective bargaining agreement. The district court invalidated the award and ordered further arbitration. Both parties appealed. The Tenth Circuit reversed that part of the judgment directing additional arbitration on the ground that labor contracts are specifically excluded from the Arbitration Act. There is nothing to indicate that the oil workers affected were engaged in the transportation industry.

In addition to the above mentioned decisions there is a district court opinion in our circuit on all fours with the instant proceedings, Ludlow Mfg. & Sales Co. v. Textile Workers Union, D.C.Del. 1952, 108 F.Supp. 45. That case was an action by an employer against a union under the Labor Management Relations Act for damages as a result of the violation by defendant of a no strike clause in a collective bargaining agreement. Judge Rodney in the district court, relying on this court's two Greyhound decisions, denied defendant's motion for a stay of proceedings pending arbitration on the ground that the Arbitration Act did not require compulsory arbitration of labor contracts.

Opposed to these views there is not a single decision delimiting the phrase "contracts of employment of * * * workers engaged in foreign or interstate commerce" as the majority has here done.[25]

---

23. See the district court opinion, D.C.D. Md.1948, 76 F.Supp. 493.

24. Similar language was used by this court in the first Greyhound case, 3 Cir., 192 F.2d 310, 313:
"For Congress to have included in the Arbitration Act judicial intervention in the arbitration of disputes about collective bargaining involving these two classes would have created pointless friction in an already sensitive area as well as wasteful duplication. It is reasonable, therefore, to believe that the avoidance of an undesirable consequence in the field of collective bargaining *was a principal purpose of excepting contracts of employment from the Act.*" (Emphasis supplied).

25. In Shirley-Herman Co. v. International Hod Carriers, etc., 2 Cir., 1950, 182 F.2d 806, 808, an action by a contractor-employer for damages arising from an allegedly illegal work stoppage on the part of the defendant union, which was en-

We are told by the majority that the exclusionary clause was intended by the draftsmen of the Act to embrace two groups of transportation workers, seamen and railroad employees, as to which special arbitration legislation already existed "and they [the draftsmen] rounded out the exclusionary clause by excluding all other similar classes of workers." The sole reason advanced for this attempted construction is the statement that the rule of ejusdem generis controls. Since the intention of Congress manifestly was to confine the Act to commercial disputes, ejusdem generis has no possible relevancy here. As said in Gooch v. United States, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522, " * * * it [the rule of ejusdem generis] may not be used to defeat the obvious purpose of legislation." See also S. E. C. v. C. M. Joiner Leasing Corporation, 320 U.S. 344, 350, 351, 64 S.Ct. 120, 88 L.Ed. 88; Cf. Smith v. Davis, 323 U.S. 111, 117, 65 S.Ct. 157, 89 L.Ed. 107 and Fitch Co. v. United States, 323 U.S. 582, 585, 586, 65 S.Ct. 409, 89 L.Ed. 472, where the rule was applied because not in conflict with the general purpose of the statute. It should be noted that if only classes of workers as to which arbitration procedure existed were intended by Congress to be excluded from the Arbitration Act it would have been a simple task to have so worded the Act. Similarly, if transportation workers alone were to have been excluded Congress could have used more appropriate language to indicate such intention.

We would come closer to effecting Congressional intent if we gave proper emphasis to the words "contracts of employment" rather than narrowly construed the phrase "workers engaged in * * * interstate commerce" in the exclusionary clause. To suggest that the 1925 concept of interstate commerce should restrict the exclusionary language of the Act in 1953 is unrealistic for three reasons. In the first place, Congress was not restricted in 1925 to *excluding* only employment contracts of workers engaged in the "direct channels" of interstate commerce—it could have provided that no employment contracts, whether they involved interstate or intrastate labor, would be subjected to compulsory arbitration in the federal courts. Second, even if it be agreed, as it must be, that the concept of interstate commerce was much narrower then than now, we need not now be bound by the older view. An analogous situation would be the case of an old statute requiring that something be done according to due process of law. Would anyone argue that in interpreting such a statute today we would be limited to a consideration of what constituted due process at the time the legislation was enacted, despite the fact that our concept of that term had greatly changed in

---

gaged in furnishing men for contracting work in the Buffalo area, the Second Circuit affirmed a judgment for plaintiff. After holding that the dispute was in an "industry affecting commerce" within the Labor Management Relations Act, under which the suit was brought, and that defendant must respond in damages for failure to arbitrate as required by the collective bargaining agreement, the court said at 182 F.2d 809:

"Defendant further contends that the arbitration provisions of the contract are illegal and unenforceable, on the ground that contracts of employment in interstate commerce are excluded in § 1 of the United States Arbitration Act, 9 U.S.C.A. § 1, and also because such a provision as that contained in the contract here deprives workers of their right to strike. But the exclusion from the Arbitration Act does not prevent such employees as these from agreeing contractually to arbitration."

There are other cases, not otherwise pertinent here, in which the courts have failed to avail themselves of the narrow construction urged by the majority. See, for example, Lewittes & Sons v. United Furniture Workers of America, D.C.S.D. N.Y.1951, 95 F.Supp. 851, and United Office & Professional Workers of America v. Monumental Life Ins. Co., D.C. E.D.Pa.1950, 88 F.Supp. 602. While the exact duties of the employees there concerned are not made clear in the opinions, the titles of the unions very strongly suggest that they were not directly engaged in the channels of interstate commerce.

the interim? In my opinion the law is not so inflexible. Third, although the statute was originally enacted in 1925, it was reenacted and codified as Title 9 of the U.S.Code in 1947. It was because of the change in the catch line of Section 1 at that time that we held in the first Pennsylvania Greyhound case, supra, that the section applied to the whole Act. Therefore the broader view of interstate commerce as it was understood in 1947 rather than the relatively narrow view extant in 1925 should be our present guide in interpreting Section 1.

For the reasons stated I would affirm.

STALEY, Circuit Judge, joins in this dissent.