**ADLEY EXPRESS et al.**

v.

**HIGHWAY TRUCK DRIVERS AND HELPERS, LOCAL 107.**

**Civ. A. No. 41262.**

United States District Court
E. D. Pennsylvania.

July 9, 1969.

Irving R. Segal, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiffs.

F. Emmett Fitzpatrick, Jr., Fitzpatrick & Smith, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

WOOD, District Judge.

This is a motion for summary judgment. Plaintiffs are trucking firms located in the metropolitan Philadelphia area. They seek damages from the defendant union under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 for an alleged strike in violation of the no-strike provision of their collective bargaining agreement. For reasons to be considered, we have concluded that the motion must be denied.

Plaintiffs contend that summary judgment as to liability is appropriate under Rule 56(c) because the defendants have conceded, they assert, that they were on strike for five days and did not submit their dispute to grievance machinery as required under the no-strike provision of the bargaining agreement.[1] Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Electrical, Radio & Machine Workers of America v. Oliver Corp., 205 F.2d 376 (8 Cir. 1953); Ludlow Mfg. & Sales Co. v. Textile Workers Union, 108 F.Supp. 45 (D.Del.1952). The events in question occurred between June 20–25, 1965, and stemmed to some extent from a work stoppage which commenced at Roadway Express Company terminal, also serviced by the defendants, on June 11. It is conceded (see Answer, paragraph 10) by the defendants that after the disturbances at Roadway[2] had lasted for nine days a meeting of Local 107 was held on June 20 at which all its officers and agents with the exception of one business agent were present, and at which the following minute was taken:

"Jack Wible from Harris Express then made a motion to dispense with the regular business so that the Road-

1. It is admitted in the answer (Paragraph 8) that Article 43, Section 1 of the collective bargaining agreement provides that:

"The Union and the Employers agree that there shall be no strike, lockout, tie-up or legal proceedings without first using all possible means of a settlement as provided for in this Agreement, of any controversy which might arise."

2. Which were before us in the related case of Roadway Express, Inc. v. Highway Truck Drivers and Helpers, Local 107, 299 F.Supp. 1058, (E.D.Pa.1969).

way problem could be discussed. The motion was seconded by William Rhinehart, put to a vote and unamiously [sic] passed. On the subject Secretary Treasurer Michael Hession then recommended that the membership take a holiday until such time as the Roadway dispute was settled. The membership by acclamation unamiously [sic] decided to follow the recommendation." [Exhibit B, Complaint]

In paragraph 12 of their answer the defendants concede that "beginning at 12:01 A.M. on Monday, June 21, 1965 a large number of employees of member companies of MTLR (a non-profit corporation organized to conduct labor relations for a number of trucking companies, including the plaintiffs) did not report to work as scheduled." The plaintiffs have affixed to this motion an affidavit of one Joseph McCann, Esq., the Executive Director of MTLR which states in relevant part that "to the best of his knowledge, information and belief a substantial number of the members of Local 107, who participated in the five day city-wide Teamster strike of 1965, which began at 12:01 A.M. on Monday, June 21, 1965, were employees of the companies listed as plaintiffs in the suit between ADLEY EXPRESS COMPANY, et al. v. HIGHWAY TRUCK DRIVERS AND HELPERS, LOCAL NO. 107, Civil Action Number 41262 * * *" (See Exhibit 1 of the plaintiffs' motion for summary judgment). It has been further agreed that on June 21 at approximately 11:00 A.M. an injunction was issued by Hon. Leo Weinrott against Local 107 and its officers (see Complaint, Exhibit C), and that at a special membership meeting of Local 107 that evening, several members addressed the assemblage referring to the events of the past day as a "strike" and urged the other members to return to work and comply with the court's

injunction. (See paragraphs 14 and 15 of the Answer). On June 25 Judge Weinrott issued an order that Local 107 pay $10,000.00 per day to the use of MTLR for each day thereafter that it failed to comply with his prior order of June 21. (Complaint, Exhibit E; Answer, paragraph 19). Finally, the Union has admitted that on June 26, a meeting of Local 107 was held at which the officers of Local 107 advised the membership of Judge Weinrott's order and ordered the members back to work. (Complaint, paragraph 20; Answer, paragraph 20).

While all of these facts may have weighty probative value in showing that there was a strike and that it was authorized, we cannot conclude that there are no "genuine issues of triable fact" because there are at least three critical issues which remain unresolved and therefore must be submitted to the trier of fact. First, there is an issue as to whether or not the conduct of the Union amounted to a strike or not. The terse minute of the meeting of July 20 is ambiguous as to what Mr. Hession meant by "holiday", and whether it was directed against Roadway or against some or all of the other trucker-employers in the Philadelphia area. The Union could not of course evade its responsibility for what was in fact a strike by calling it another name; however, it must be established that under the circumstances at bar what was contemplated by the use of the word holiday was a strike. This question can only be resolved by further development of the factual context in which the resolution was passed. The plaintiffs' affidavit and the defendants' admissions establish that a "large" or "substantial" number of employees did not report for duty on the twenty-first, but whether such conduct in fact constituted a "strike" as to any or all of the plaintiffs within the meaning of the col-

lective bargaining agreement remains unresolved.

A second issue which must await trial for resolution is whether, assuming that the conduct of the employees amounted to a strike, such actions were approved or ratified by the appropriate Union officers. Article 43(7) (a) of the collective bargaining agreement requires the Union to submit a list of representatives who will "have the sole authority to act for the Union in calling or instituting strikes or any stoppages of work." It is further provided in the same section that "in all cases of an unauthorized strike, slowdown, walkout, or any unauthorized cessation of work in violation of this Agreement, the Union shall not be liable for damages resulting from such unauthorized acts of its members." Therefore it is an essential part of the plaintiffs' case to show that the strike was authorized and, in view of the fact that the defendants intend to present evidence that the Union officers ordered the men back to work before they actually returned, how long it was authorized.

Finally, since there are a number of plaintiffs involved, to establish liability toward each it must be shown that the acts of the defendants constituted an authorized strike with regard to each of the plaintiffs. Even assuming that a "large" or "substantial" number of 107 members did not appear for work on the days in question, it is still unresolved whether such absence under the circumstances constituted an authorized strike with respect to each plaintiff.

Since genuine issues of triable fact remain, this case must proceed to trial.

## ORDER

And now, this 9th day of July, 1969, IT IS ordered that the motion for summary judgment is denied.