CEFERINO PÉREZ, Plaintiff and Appellant, v. WATER RESOURCES AUTHORITY, Defendant and Appellee.

No. 643. Decided January 25, 1963.

---

*Leonardo Llequis* and *Ismael Cardona* for appellant. *José C. Ramos Vázquez, Juan F. Doval, Carlos Eduardo Lube,* and *Rafael Buscaglia, Jr.,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The issue in this case is whether an employer and a labor organization may validly contract in a collective agreement that the wages and overtime disputes be discussed and decided by means of an arbitration procedure established in the agreement. We must also decide whether, the agreement and the arbitration provision being valid and the question of wages not having been excluded from the arbitration, the wages and overtime controversies may be decided by means of said arbitration.

Petitioner filed a claim for overtime wages under the authority of Act No. 379 of May 15, 1948, 29 L.P.R.A. § 271 *et seq.*, and availing himself of the special procedure provided by Act No. 10 of November 14, 1917, 32 L.P.R.A. § 3101 *et seq.*[1] Petitioner rendered services to respondent, for pay, from February 1958 to July 1961, and worked under the terms of two collective agreements, the second one of which took effect immediately upon termination of the first. The question involves two formal collective agreements freely entered into between respondent and "Unión Insular de Trabajadores de la Construcción, Afiliada a la Federación Libre de los Trabajadores de Puerto Rico." Those agreements con-

---

[1] Act No. 10 of 1917 *supra* was substituted by Act No. 2 of October 17, 1961, 32 L.P.R.A. § 3118 *et seq.* (Supp.).

tain provisions on vacation, union shop, working week, life insurance, wages, medical, hospitalization and medicine plan, permanence in work, rest periods, leave with pay to handle union matters, guarantee of minimum compensation, per diems, holidays, extra compensation, etc., and art. VII (same in both agreements) entitled "Grievance Committee" reads as follows:

"A Grievance Committee is hereby created to which an appeal may be taken from *any complaint or claim which may arise in connection with the provisions hereof* and which has not been decided by the Union and Authority representatives in each locality nor in the superior rank. This Committee shall be composed of two representatives designated by the Authority and two representatives designated by the Union. The Grievance Committee shall have powers to conduct any investigation of any case which may be submitted to it for consideration and shall decide the same by a majority. In those cases in which the Grievance Committee is unable to reach an agreement within 30 days after the claim or complaint is submitted to it for consideration, a fifth member shall be unanimously designated and the decisions of the Committee thus constituted shall be final for the parties; *Provided,* That in the event the Grievance Committee is unable to reach an agreement as to the fifth member, a member of the Conciliation Service shall be automatically designated who shall render any award in whatever complaint or case may be submitted to him. After passing upon any claim or complaint, the Grievance Committee shall send a full report thereon to the Authority and to the Union." (Italics ours.)

Petitioner, a member of the contracting Union, resorted to court without first appealing to the Grievance Committee. Upon finding that petitioner had not availed himself of the remedy provided by art. VII of the collective agreements in question, the trial court, at the party's request and relying upon our ruling in *Labor Relations Board* v. *N.Y.&P.R.S.S. Co.,* 69 P.R.R. 730 (1949), and *Rivera* v. *Land Authority,* 83 P.R.R. 251 (1961), dismissed the complaint.

Petitioner assigns the following two errors: (1) "The court erred in concluding that the fact that there is a col-

114

lective agreement which contains a Grievance Committee provision defeats the laborer's constitutional right to claim judicially payment of extra hours in excess of the legal working period, plus the penalty provided by law for judicial adjudication." (2) "The court erred in concluding that the doctrine laid down by this Supreme Court in *Rivera* v. *Land Authority* applies to this case." Complainant does not question our holding in *Rivera, supra*, but he contends that he can disregard the arbitration provision of the agreement because his right to receive extra pay for work in excess of the eight-hour working period is guaranteed by the Constitution of Puerto Rico.[2]

█ The collective agreement is the law between the parties, provided it does not violate the laws nor the Constitution. With the limitation mentioned, it is the law of the industry or factory concerned. It has been said that it is an effort to erect a system of industrial self-government. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579-80 (1960). Are the agreements in question contrary to law or to the Constitution? Except for what has been mentioned in error No. 1 assigned by petitioner— to which we will return presently—petitioner does not point out nor do we find any incompatibility between those agreements, the laws and the Constitution. Let us examine the situation concerning overtime payment: (a) the Constitution of Puerto Rico, Art. II, § 16, provides that an employee may work in excess of the daily eight-hour limit only when he is paid extra compensation "as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed." (b) The Act directs that "every employer who employs or permits an employee to work during extra hours shall be obliged to pay him for each extra hour a wage rate equal to double the rate agreed upon for regular

---

[2] For other constitutional provisions of several states on legal working period, very limited in their scope, see Index Digest of State Constitutions 591 (2d ed. 1959, Columbia University).

hours," 29 L.P.R.A. § 274.[3] (c) The two agreements under which complainant worked provide for the payment of extra hours at a rate equal to twice the regular wage rate which the worker may be receiving. From the foregoing it may be seen that as respects the question under consideration—extra hours —there is perfect harmony between the Constitution, the Act and the collective agreements.

Nor is there any controversy as to the arbitration provisions of the agreements. These are clear and their terms are broad. They direct that *any* complaint or claim which may arise over the provisions of the agreements shall be submitted to the Grievance Committee. The matter of wages and overtime compensation was not excluded from the power of the Grievance Committee, nor was it excluded from the parties' duty to submit to the Committee any complaint or claim which might arise in connection with the agreements.

Petitioner alleges that if he is compelled to arbitrate pursuant to the covenant in the collective agreements, his constitutional right to claim judicially payment of extra compensation for overtime would be defeated. We do not agree. His constitutional right to such extra compensation guaranteed by § 16 of Art. II of the Constitution does not repeal his *likewise constitutional* right to organize and bargain collectively with his employer, which right is guaranteed by § 17 of the same article. It was precisely in the exercise of his constitutional right to bargain collectively that petitioner contracted the agreements and the arbitration clauses which he now seeks to repudiate. The Constitution covers petitioner with all its clauses; he can not invoke one and pretend that the others do not exist.

 The collective agreement and the grievance and arbitration provision are equally binding on both parties, *Rivera* v. *Land Authority, supra* at p. 257; *Labor Relations*

---

[3] It is not necessary to consider here the exceptions made by the law for the industries covered by the Fair Labor Standards Act of the United States, which exceptions are contained in the section *supra*.

*Board* v. *N.Y. & P.R. Steamship Co., supra* at p. 752 *in fine; Textile Workers Union of America* v. *Lincoln Mills,* 353 U.S. 448, 454. We have already stated that the recognition that collective agreements are equally binding on the contracting parties (that is, on the workmen and on the employers) creates a higher degree of responsibility in the contracting parties, which in turn promotes industrial peace. *Rivera, supra* at p. 257; *Textile Workers, supra,* at p. 454. The question involved herein is a matter of public interest. We refer to the labor-management relations, to the collective bargaining and to the arbitration procedures. The public policy expressed by the Legislative Assembly of Puerto Rico in our Labor Relations Act, 29 L.P.R.A. § 62, indicates the necessity of promoting collective bargaining as an efficient instrument to achieve industrial peace. Experience has shown that the labor-management relationship is closely connected with the economy and the general welfare of contemporaneous society. Collective bargaining as well as the grievance and arbitration procedure established thereby are vested with public interest, for they are direct and efficient means to promote industrial peace and stability as well as the most fair distribution of the wealth created by management and labor. It is a well-settled rule that the arbitration of labor disputes under the terms of collective agreements is an integral part of the collective bargaining process itself. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578 (1960); *Labor Relations Board* v. *N.Y.& P.R.S.S. Co., supra,* at p. 741.

■ The Puerto Rico Labor Relations Board correctly stated: "We believe that the settlement, by mutual agreement of the parties, of disputes which may arise over the application of a collective agreement is something highly desirable. Such measures may be conceived as the culmination of the collective bargaining process... To encourage such practices is in reality to encourage collective bargaining.

It should be further considered that whenever the parties incorporate measures of this nature in an agreement, they have selected the method which in their opinion is more appropriate in deciding controversies which may arise under the contract. Such agreements must be respected. For these reasons, this Board, in accomplishing the legislative purpose, generally does not entertain cases of violation of agreement whenever the parties have not exhausted the remedies provided by the agreement itself for the solution of such problems." *Simmons International, Ltd. y Local 423 of Upholsterer's International Union of North America, AFL-CIO*, 2 D.J.R.T. 250 (1953).

The Congress of the United States has also made express declarations of public policy on the matter, stating that the adjustment by the methods agreed upon by the parties is the desirable method for settlement of disputes arising over the application or interpretation of collective agreements. 61 Stat. 153 (1947), 29 U.S.C.A. § 173(d). Referring to that provision, the United States Supreme Court has said that that public policy can be effectuated only if the means or procedures chosen by the parties under their collective agreements is given full play. *United Steelworkers of America* v. *American Manufacturing Co.*, 363 U.S. 564, 566 (1960). That same day, in another case, that Court pointed out that the federal policy is to promote industrial stabilization through collective agreements, and that a major factor in achieving industrial peace is the inclusion of arbitration provisions in such agreements. *Steelworkers* v. *Warrior & Gulf Co., supra*, p. 578. It added that the collective agreement is more than a contract, since it is a generalized code of the industry to govern a myriad of cases which can not wholly be anticipated. *Ibid.* See, also, *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448, 454-55 (1957); SHULMAN, *Reason, Contract and Law in Labor Relations*, 68 Harv. L. Rev.

118

999, 1004–05; Cox, *Reflections Upon Labor Arbitration*, 72 Harv. L. Rev. 1482, 1498–99 (1959).

Arbitration as a peaceful means of settling controversies is an institution of remote origin.[4] Originally the Anglo-Saxon common-law courts were hostile to it for not too worthy reasons which are explained in *United States Asphalt Refining Co.* v. *Trinidad Lake Petroleum Co.*, 222 Fed. 1006 (1915); *Kulukundis Shipping Co.* v. *Amtorg Trading Corp.*, 126 F.2d 978 (1942). In our times, arbitration in labor-management relations took a long stride forward during the years of World War II, and it proved to be so satisfactory that its voluntary use has been increasingly continued.[5] In the United States the controversies settled annually by arbitration mount to thousands. In Puerto Rico the Secretary of Labor states in his 1958–59 annual report that in the Conciliation and Arbitration Bureau of his department the activity which registered the greatest increase was the work of arbitration. That year the department participated in 238 arbitration cases, the highest number in the preceding 12 years.[6] In 1959–60 the department participated in 294 arbitration cases, a number even greater than the preceding number.[7]

This is so because participants and observers, and, as we have seen, the legislative bodies and the courts as well, generally recognize that arbitration is a more appropriate and desirable procedure than court litigation for settling disputes arising over the application and interpretation of collective agreements. It is speedier and less expensive than

---

[4] UPDEGRAFF & McCOY, Arbitration of Labor Disputes 3–6 (2d ed. 1961); WOLAVER, *The Historical Background of Commercial Arbitration*, 83 U. Pa. L. Rev. 132–46; PLUCKNETT, A Concise History of the Common Law 108–14 (1936).

[5] UPDEGRAFF & McCOY, *op. cit.*, 1 and 8; UPDEGRAFF, *The War-Time Arbitration of Labor Disputes*, 29 Iowa L. Rev. 328 (1944).

[6] Annual Report of the Secretary of Labor 33–36 (1958–59).

[7] Annual Report 36 (1959–60).

the court proceedings and less technical and more flexible than those proceedings.[8]

As to the arbitrability of the question raised in this case, we may point out that neither the Constitution nor the laws prohibit it. As we have seen, the legislative statements, the authorities and the scholars on the matter favor giving the greatest free play possible to the complaint and arbitration procedures agreed by the parties, without further limitations than those which the laws and the parties themselves may impose. Thus, in *Donahue v. Susquehanna Collieries Co.*, 138 F.2d 3 (1943), a case similar in its issues to the case at bar, the Third Federal Circuit, faced with a claim for unpaid overtime wages, remanded the case for arbitration. The agreement in question contained an **arbitration provision** whereby the parties were bound to refer to the board of conciliation the disputes growing out of the labor-management relations. As in our case, that **arbitration provision** did not contain an express wage provision. The court said that a claim for wages is a controversy "clearly growing out of the relations of employers and employed" and squarely within the complaint and arbitration provision. The court pointed out that the statute did not prohibit arbitration in those cases, and that Congress could have done so had it wished. *Ibid.* p. 6. Similarly, another claim for overtime wages was referred to arbitration in *Watkins v. Hudson Coal Co.*, 151 F.2d 311 (1945), as well as in another similar situation in *Evans v. Hudson Coal Co.*, 165 F.2d 970 (1948), citing *Donahue* and *Watkins* cases *supra.* See, also, the cases cited in 24 A.L.R.2d 778.

In *Tuschman Steel Co. v. Tuschman*, 181 N.E.2d 322 (1961), also similar in some of its aspects to the case at bar, it was sought to enforce an arbitration agreement. Defendant alleged that the agreement was violative of the right to resort to the state courts guaranteed by the constitution of

---

[8] *Wilko v. Swan*, 346 U.S. 427, 431; UPDEGRAFF & MCCOY, *op. cit.*, p. 15.

his state. The court said at p. 327 that arbitration does not violate the Constitution, that it merely provides for an additional remedy to settle controversies other than the judicial remedy granted by the Constitution, of which remedy (arbitration) the parties may avail themselves of their own free choice. It further said that defendant voluntarily bound himself to arbitrate and was in no position to claim that the courts were not open to him. The matter was referred to arbitration.

In *Berkowitz* v. *Arbib & Houlderg*, 130 N.E. 288 (1921), speaking through Mr. Justice Cardozo, the court held that an arbitration law was not in violation of the constitutional right to resort to court. What the law merely does, said the court, is to provide two remedies where formerly there had been only one.

In June 1962 the Supreme Court of the United States decided a similar situation in *Drake Bakeries, Inc.* v. *Local 50, American Bakery & Confectionery Workers International, AFL-CIO*, 370 U.S. 254 (1962). In that case the employer sued the union for damages allegedly sustained as a result of a strike in violation of the collective agreement. The agreement contained a clause providing that complaints arising over the application of the agreement and the relationship between the parties were arbitrable. It was held that the employer was bound to arbitrate the controversy.

██ We deem it unnecessary to elaborate further. If we were to uphold petitioner's position that the rights under agreements are arbitrable but not those which grow out of the law or of the Constitution, collective bargaining would be defeated since practically all rights arising from collective agreements, or at least the most important ones—right to compensation, vacation, extra compensation for overtime, rest days, holidays, recognition of the unions and of the laborers' representatives, human and salutary working conditions, etc.—may be related in some way with the Constitu-

tion or the laws. As stated by the Supreme Court of the United States in *Steelworkers* v. *Warrior & Gulf Co., supra* at p. 581, "apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process."

We therefore decide in the affirmative the two questions raised in the first paragraph of this opinion, namely, (1) that an employer and a labor organization may validly contract in a collective agreement that the wages and overtime disputes be discussed and decided by means of an arbitration procedure established in the agreement, and (2) that under a valid agreement and an arbitration clause providing that all complaints or claims which may arise in connection with or as a result of the agreement provisions, and from which arbitration clause the question of wages is not excluded, the wages and overtime controversies may and shall be decided by arbitration.

We ratify what was said in *Labor Relations Board* v. *N.Y. & P.R.S.S. Co., supra* at pp. 746–48, in the sense that an award can not be set aside for errors either as to the law or as to the facts, since the parties who enter into an agreement of this nature must understand that they have substituted the committee or the arbitrator by the courts for the determination of all questions of fact and substantive law. As an exception to what has been said, when it is expressly specified in the agreement that all matters submitted to the committee or to the arbitrator, or that certain matters which may be pointed out, as the case may be, shall be decided in pursuance of law, the awards may be judicially reviewed for errors of law.

In the belief that the arbitration provisions of the agreements already entered into were not drawn up and ap-

proved by the parties, having in mind the ruling herein announced, the effect of this decision shall be prospective only. For this reason the order entered in this case on October 31, 1961, by the Superior Court, Caguas Part, will be set aside and the case remanded to that court for further proceedings.

The writer of this opinion is not agreeable that it shall have prospective effect only, since in his opinion this is an inconsistency. He believes that the Superior Court's decision was correct (as is actually held in this opinion), and that, therefore, the order of the Superior Court in this case should be affirmed. However, the foregoing is the opinion of the Court.